LOUIS R. KAGAN, PLAINTIFF-RESPONDENT, v. LOUIS P. CAROSELLI, DEFENDANT-APPELLANT.

Argued June 17, 1959—Decided June 30, 1959.

372

*Mr. Isadore Glauberman* argued the cause for defendant-appellant (*Messrs. Nicholas S. Schloeder* and *Isadore Glauberman,* attorneys).

*Mr. Joseph A. Davis* argued the cause for plaintiff-respondent.

The opinion of the court was delivered by
WEINTRAUB, C. J. This case involves competing claims to the office of magistrate in the City of Jersey City.

Plaintiff relies upon an appointment by the entire governing body while defendant claims an appointment by the director of public safety. The Law Division found for plaintiff. We certified the appeal taken to the Appellate Division.

The city has the commission form of government. Following the enactment of *L.* 1948, *c.* 264 (*N. J. S.* 2A:8-1 *et seq.*), a comprehensive statute designed to replace a haphazard set of local courts by the present system of municipal courts, the city established a municipal court under the provisions of that act. The ordinance provided for appointment of the magistrates by resolution of the board of commissioners.

*N. J. S.* 2A:8-5 provides that in municipalities other than ones governed by a mayor-council form of government the magistrate "shall be appointed * * * by the governing body of the municipality." Defendant however contends that, with respect to the commission form of government, "governing body" should be deemed to be the head of the department to which the municipal court was assigned at the organization meeting, here, the director of public safety.

Three provisions of the "Walsh Act" establishing the commission form of government, are pertinent. *R. S.* 40:72-2 reads:

"The board of commissioners established hereunder shall have all the executive, administrative, *judicial* and legislative powers and duties *heretofore had and exercised by the mayor and city council and all other executive or legislative bodies* in such municipality, and shall have complete control over the affairs of such municipality." (Emphasis added)

*R. S.* 40:72-4 provides:

"The executive, administrative, *judicial* and legislative powers, authority and duties in such municipality shall be distributed into and among five departments * * * as follows:
1. Department of public affairs.
2. Department of revenue and finance.
3. Department of public safety.
4. Department of public works.
5. Department of parks and public property." (Emphasis added)

*R. S.* 40:72–5 provides:

"The board of commissioners shall determine the powers and duties to be performed by each department and shall assign such powers and duties to each department as it may deem *appropriate.* \* \* \*" (Emphasis added)

In *Murphy v. Board of Commissioners of Newark,* 119 *N. J. L.* 537, 539 (*Sup. Ct.* 1938), affirmed on opinion below, 121 *N. J. L.* 75 (*E. & A.* 1938), it was held that the Walsh Act "requires the assignment of all public duties *by all governmental agencies under the direction of the board of commissioners* to a department \* \* \*. In other words, the statute as interpreted by our courts provides that the commissioners at the organization meeting shall assign the *duties to be performed by the various major departments,* that all agencies, officers and employees shall be assigned to a major department. \* \* \*" (Emphasis added) It has also been held that the power to appoint to an office so assigned resides in the director of the particular department, except that the board itself may appoint at the organization meeting. *Daly v. City of New Brunswick,* 3 *N. J.* 397, 400 (1950). Here the appointment of plaintiff occurred after the organization meeting and the assignment of the municipal court.

Grouping these propositions, defendant argues that under the Walsh Act the power of appointment would be in the director of the department to which "the municipal court" was assigned if that act alone were involved. The 1948 act, he contends, should not be interpreted to depart from the basic pattern of the Walsh Act, and hence, although the 1948 statute places the appointive power in the "governing body," that term should be held to mean, not the board of commissioners, but rather the individual department head.

The question, of course, is one of legislative intention. That the board of commissioners is the "governing body" of the city cannot be disputed. And it is equally clear that "governing body" in its normal sense means the board of

commissioners. The term was expressly so defined in the Home Rule Act as revised in the general revision of 1937, *R. S.* 40:42–2, after it had been so construed and applied to a Walsh Act municipality in *Simon v. O'Toole,* 108 *N. J. L.* 32 (*Sup. Ct.* 1931), affirmed on opinion below, 108 *N. J. L.* 549 (*E. & A.* 1932). The broad proposition that "governing body" should always be deemed to signify the department head under the commission form of government quite obviously is untenable. One further example will suffice. Under the zoning statute, the recommendation for a variance made by the board of adjustment is subject to the approval or disapproval of "the governing body or board of public works." *N. J. S. A.* 40:55–39(*d*). It could hardly be maintained that the director of the department to which the board of adjustment is assigned, was intended to be the approving authority.

Defendant relies upon *McDevitt v. Shore Yellow Cab Co.,* 131 *N. J. L.* 397 (*Sup. Ct.* 1944), affirmed on opinion below, 132 *N. J. L.* 169 (*E. & A.* 1944), and *Wohlgemuth Bus Co. v. Public Service Co-ordinated Transport,* 125 *N. J. L.* 232 (*Sup. Ct.* 1940).

In *McDevitt* a statute enacted after the Walsh Act provided the "governing body" may "fix fees" for certain licenses and "revoke any license for sufficient cause and after notice and hearing." It was held that the director of the department to which the licensing authority was assigned could revoke a license. The court dealt briefly with the matter, citing *Foley v. City of Orange,* 91 *N. J. L.* 554 (*E. & A.* 1918). As will presently be developed, *Foley* had held that the "judicial" power of the municipality was transmitted by a self-executing amendment of the Walsh Act to each department head in furtherance of his administrative or supervisory responsibility.

In *Wohlgemuth* the court, interpreting a statute enacted after the Walsh Act and dealing with consent to the operation of autobuses, concluded that consent given by the director of the department of public affairs satisfied a requirement

for the consent of "the board or body having control of the public streets in the municipality." The quoted phrase is not as confining as "governing body"; the director had been vested with control of the public streets in the aspect there pertinent.

The most that can be gathered from those cases is that "governing body" in a statute applicable to municipalities *may* mean the head of a department under the Walsh Act if the function involved is one which, under the Walsh Act, *must* be distributed by the governing body to one of the departments. Upon that approach the inquiry here is (1) whether the magistrate of the municipal court performs duties which under the Walsh Act must be assigned to one of the departments (more particularly, the inquiry is whether the powers and duties of the magistrate fall within the "judicial * * * powers, authority and duties in such municipality" required to be distributed to a department by *R. S.* 40:72–4 quoted above), and (2) whether those powers and duties can be said to be "appropriate" to one of the departments within the meaning of *R. S.* 40:72–5, also quoted above.

A magistrate does not exercise the "judicial" power, authority, or duty of a municipality. On the contrary, his court is an integral part of a state-wide judicial system, and the judicial power he exercises is the judicial power of the State. *Krieger v. City of Jersey City,* 27 *N. J.* 535, 539 (1958). The Constitution provides "The judicial power shall be vested in a Supreme Court, a Superior Court, County Courts and inferior courts of limited jurisdiction." *Art.* VI, § I, *par.* 1. The municipal court, as an inferior court of limited jurisdiction, shares in this single power. Quite obviously the board of commissioners is not an inferior court of limited jurisdiction. It possesses no portion of this judicial power and hence has none to distribute to a department of the city.

The 1948 statute granted to the municipal court and the magistrate jurisdiction of matters which are in no sense

municipal. Included are violations of various state laws, N. J. S. 2A:8–21, and certain criminal offenses upon waiver of indictment and trial by jury. N. J. S. 2A:8–22. The magistrate is authorized to commit a person charged with any indictable offense, N. J. S. 2A:8–23. The judges of the County Court are ex-officio judges of the municipal court and a Superior Court judge may be assigned by the Chief Justice to hold temporarily a municipal court. N. J. S. 2A:8–11. It is difficult to think of a County Court or Superior Court judge sitting in the exercise of a judicial power, authority or duty of a municipality.

The "judicial" power, authority and duty of the municipality, to which the quoted sections of the Walsh Act refer, are the judicial functions incidental to the internal affairs or administrative functions of the municipality. This is evident from the history of the act. Initially there was no requirement for the distribution of that judicial authority to the department heads. Hence it was held in *Herbert v. Atlantic City*, 87 N. J. L. 98 (*Sup. Ct.* 1915), that the entire governing body had to hear a disciplinary charge against an employee. The statute was amended in the same year to include the "judicial" function in the powers to be distributed among the departments. *Crane v. Jersey City*, 90 N. J. L. 109, 112 (*Sup. Ct.* 1917), affirmed on opinion below, 92 N. J. L. 248 (*E. & A.* 1918); *Foley v. City of Orange, supra* (91 N. J. L. 554); *Hewson v. City of Newark*, 95 N. J. L. 28 (*Sup. Ct.* 1920), affirmed on opinion below, 95 N. J. L. 544 (*E. & A.* 1921). In *Foley*, it was held that the 1915 amendment was self-executing and transmitted the "judicial" authority to each director with respect to the operation of his department. Quite obviously, this is not the "judicial" power and duty of the municipal court. More accurately, in customary legal phrasing, the "judicial" power contemplated in the Walsh Act is the *quasi*-judicial power familiar in executive and administrative settings. It was because of an identification of the power of revocation with this *quasi*-judicial power that *McDevitt, supra* (131 N. J. L.

397) held a single director could revoke a taxicab license, citing *Foley* as authority.

And if we turn to the provision of *R. S.* 40 :72–5, that the board "shall assign such powers and duties to each department as it may deem *appropriate,*" the foregoing thesis is further confirmed. The powers and duties of the office of magistrate are not appropriate to any of the departments of local government. Indeed they are not appropriate to the board of commissioners itself. The Constitution places the administrative control of the municipal court in the Supreme Court and the Chief Justice. *Art.* VI, § 2, *par.* 3; *Art.* VI, § 7, *par.* 1. There is no room for divided authority. The constitutional plan assures to the magistrate independence of local government and the 1948 statute was designed to preserve it. See *In re Klaisz,* 19 *N. J.* 145, 148 (1955).

■ The appointive power was not given to local government because it is inherently appropriate to place it there. Indeed, historically the pattern varied. The City of Jersey City itself experienced many approaches. Under its charter, the police justices were appointed by the Legislature; under subsequent legislation by the Governor; and still later by the mayor. *McCarthy v. Queen,* 76 *N. J. L.* 144, 145–46 (*Sup. Ct.* 1908), affirmed on opinion below, 76 *N. J. L.* 828 (*E. & A.* 1909). The legislative decision in the 1948 statute to repose the power in the governing body was, wisely or not, a concession to those who thought a voice in the matter should be given to the municipalities. But the power to appoint did not make the functions of a magistrate a phase of local government. Rather, in exercising the appointive power, the governing body acts merely as a statutory agent. See *Monte v. Milat,* 17 *N. J. Super.* 260, 265 (*Law Div.* 1952).

■ To recapitulate, the Legislature provided that the appointment shall be made by the "governing body." The natural meaning of the term is the board of commissioners. For the reasons stated, there is no incongruity with the provisions of the Walsh Act relating to the distribution of

the powers possessed by local government and hence no basis for denying "governing body" its normal meaning. There is no apparent reason why the Legislature would have intended but one of the directors to exercise the power. On the contrary, if the appointment is to be made by a local authority, the board of commissioners, which is ultimately chargeable for the total local affairs, *Grogan v. DeSapio,* 11 *N. J.* 308, 321 (1953), is more logically the recipient of the responsibility than would be a single commissioner. It may be added that *Perry v. Bianchi,* 96 *N. J. L.* 113 (*Sup. Ct.* 1921), held that upon the adoption of the commission form of government the power to appoint the magistrate there passed from the Governor to the board of commissioners. The single expression pointing the other way is *Pashman v. Friedbauer,* 4 *N. J. Super.* 123 (*App. Div.* 1949). The issue, however, was not bruited, since there both contestants claimed through appointment by an individual director, and hence there was no occasion to urge the view we hold.

The judgment is affirmed.

JACOBS, J., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.