57 N.J. Super. 503 (1959)
155 A.2d 148
T. JAMES TUMULTY, PLAINTIFF-APPELLANT,
v.
THE CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, THE HOUSING AUTHORITY OF JERSEY CITY, A BODY CORPORATE AND POLITIC, AND MAURICE B. McLAUGHLIN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1959.
Decided October 22, 1959.
*505 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Arthur C. Mullen argued the cause for appellant.
Mr. Vincent J. Cartier argued the cause for respondent Maurice B. McLaughlin.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This action in lieu of prerogative writs involves competing claims to the office of housing commissioner of Jersey City. Defendant McLaughlin relies *506 upon his appointment by the governing body; plaintiff claims he was legally appointed by the Mayor, who is also the Director of the Department of Public Affairs. The Law Division entered judgment in favor of defendants, dismissing the complaint and adjudging that McLaughlin's appointment as a member of the Jersey City Housing Authority was an effective and legal appointment.
Jersey City operates under the commission form of government. R.S. 40:70-1 et seq., as amended (also known as the Walsh Act). On May 17, 1938 the city, pursuant to the provisions of N.J.S.A. 55:14A-1 et seq., as amended (the Local Housing Authorities Law), adopted an ordinance creating the Housing Authority of the City of Jersey City. There was a municipal election in Jersey City in May 1957 at which five commissioners were elected. They took office and on May 21, 1957 held their first and organization meeting, at which time Charles S. Witkowski was elected Mayor and designated as Director of the Department of Public Affairs. The commissioners also unanimously adopted a resolution assigning the Housing Authority, along with other bureaus, agencies and boards, to the Department of Public Affairs and vesting in the Director "all the powers, authority, rights and duties vested in or given by any statute, charter, ordinance or resolution" relating to them.
On September 16, 1958 the board of commissioners, by resolution adopted by a 4-1 vote, the negative vote being that of Mayor Witkowski, appointed defendant McLaughlin a member of the Jersey City Housing Authority for a term of five years. McLaughlin took the oath of office, received his certificate of appointment from the city clerk, and filed the resolution of appointment and the certificate with the Housing Authority. On September 18, 1958 Witkowski, as Mayor and Director of the Department of Public Affairs, appointed plaintiff Tumulty to the same office. Tumulty took the oath of office and the city clerk certified the appointment. At the regular meeting of the Housing Authority held September 25, 1958 both Tumulty and *507 McLaughlin appeared and made claim to be seated as a member of the Authority. The Authority, by unanimous vote of all members present, seated McLaughlin, but refused to recognize Tumulty's appointment and returned his credentials to him. McLaughlin then took his seat as a member of the Housing Authority.
The single question to be determined is: Who has the power of appointment to fill a vacancy in the Housing Authority of the City of Jersey City? The Law Division judge concluded that the appointing power was in the governing body (the board of commissioners), and not in a single commissioner (the Director of Public Affairs), as plaintiff contends. We agree.
In 1937 Congress enacted the United States Housing Act, 42 U.S.C.A. § 1401 et seq. The policy expressed in the act was that of assisting the several states and their political subdivisions to alleviate and remedy unsafe and unsanitary housing conditions and the acute shortage of decent, safe and sanitary dwellings for families of low income in urban and rural nonfarm areas. § 1401. These aims were to be accomplished through loans (§ 1409) and annual federal contributions (§ 1410) to local public housing agencies.
The New Jersey Legislature made possible the acceptance of the federal offer of aid by enacting the Local Housing Authorities Law, N.J.S.A. 55:14A-1 et seq., a year after Congress had acted. This law, as our Supreme Court observed in DeVita v. Housing Authority of Paterson, 17 N.J. 350, 352 (1955), was "designed to implement the far-reaching national housing program which contemplated federal loans and subsidies to local housing agencies. 42 U.S.C.A. § 1401 et seq." Bearing in mind the conditions precedent which were to be performed by "the governing body of the locality involved," 42 U.S.C.A. §§ 1410(a), 1415(7)(b), the Legislature specifically defined "governing body" to mean, in the case of a municipality, "the common council or the board of commissioners or the body managing its affairs * * * provided, however, that in the case of *508 cities of the second class having a population of not less than one hundred thirty-three thousand nor more than two hundred thousand inhabitants, the board of finance of such city shall be the `governing body' for the purpose of this act." R.S. 55:14A-3(c), as amended. Thus, in every case, it is the governing body which acts jointly; in no case is it a member of the group.
The Legislature then went on to grant certain powers to the "governing body":
"Any governing body may, by * * * ordinance in the case of municipalities, create a body corporate and politic to be known as the `Housing Authority of ____' * * *. Such authority shall constitute an agency and instrumentality of the municipality * * * creating it. The authority shall consist of six members who shall be appointed and hold office for the terms as hereinafter provided. The governing body shall appoint five commissioners of the authority. * * *" (N.J.S.A. 55:14A-4, as amended)
Nowhere in the Local Housing Authorities Law do we find any indication that this appointing power can be delegated.
Plaintiff's contention is that the assignment of the Housing Authority to the Department of Public Affairs, headed by Mayor Witkowski, was in accordance with the Walsh Act (R.S. 40:70-1 et seq.); that it carried with it the power to appoint members of the Authority; and thereby divested the board of commissioners of any authority to appoint such members. More specifically, the thrust of his argument is that the language of the Local Housing Authorities Act, and specifically N.J.S.A. 55:14A-4, quoted above, must be read in pari materia with the Walsh Act; that the reference in N.J.S.A. 55:14A-4 to the "governing body" means the governing body as its powers and duties have been delegated to the five main departments of local government; and that since the Jersey City Housing Authority had been delegated to the Director of Public Affairs, the power of appointment to that authority had also been delegated to him.
This argument is erected on the foundation of the following three statutory provisions of the Walsh Act:
*509 R.S. 40:72-2:
"The board of commissioners established hereunder shall have all the executive, administrative, judicial and legislative powers and duties heretofore had and exercised by the mayor and city council and all other executive or legislative bodies in such municipality, and shall have complete control over the affairs of such municipality."
R.S. 40:72-4:
"The executive, administrative, judicial and legislative powers, authority and duties in such municipality shall be distributed into and among five departments, except that in municipalities having but three commissioners, three departments shall be designated and provided by the consolidation of the first and third departments and the fourth and fifth departments as follows:
1. Department of public affairs.
2. Department of revenue and finance.
3. Department of public safety.
4. Department of public works.
5. Department of parks and public property."
R.S. 40:72-5:
"The board of commissioners shall determine the powers and duties to be performed by each department and shall assign such powers and duties to each department as it may deem appropriate. * * *"
Plaintiff contends that any power of appointment vested in the "governing body" was subject to the mandatory provisions of the quoted sections of the Walsh Act. It therefore became the duty of the Jersey City Board of Commissioners to assign the power of appointment of Housing Authority members to one of the city departments, and that power, having been assigned by resolution to the Mayor as Director of the Department of Public Affairs, could be exercised only by him individually, and no longer by the city commission as a whole  citing a line of authority following upon Foley v. Orange, 91 N.J.L. 554 (E. & A. 1918), and ending with Pashman v. Friedbauer, 1 N.J. Super. 616 (Law Div. 1949), affirmed 4 N.J. Super. 123 (App. Div. 1949). In short, the argument is that the statutory term "governing body" must be deemed to mean the head of the *510 department to which the Housing Authority was assigned, namely, the Director of Public Affairs.
As the Supreme Court recently observed in Kagan v. Caroselli, 30 N.J. 371, 377 (1959), the most that can be gathered from the cases cited to us by plaintiff is that "governing body" in a statute applicable to municipalities "may mean the head of a department under the Walsh Act if the function involved is one which, under the Walsh Act, must be distributed by the governing body to one of the departments." See, for example, Sykes v. Heinzman, 100 N.J.L. 12 (Sup. Ct. 1924) (comptroller); Seaman v. Strollo, 105 N.J.L. 570 (E. & A. 1929) (city engineer); Murphy v. Bayonne, 130 N.J.L. 336 (Sup. Ct. 1943) (city clerk). The inquiry here must be, first, whether the Housing Authority is an agency performing duties which, under the Walsh Act, must be assigned to one of the departments of local government, and second, whether the powers and duties of the Housing Authority can be said to be "appropriate" to one of the departments within the meaning of R.S. 40:72-5, just quoted.
Chief Justice Weintraub, speaking for the unanimous court in Kagan, observed that
"The question, of course, is one of legislative intention. That the board of commissioners is the `governing body' of the city cannot be disputed. And it is equally clear that `governing body' in its normal sense means the board of commissioners. The term was expressly so defined in the Home Rule Act as revised in the general revision of 1937, R.S. 40:42-2, after it had been so construed and applied to a Walsh Act municipality in Simon v. O'Toole, 108 N.J.L. 32 (Sup. Ct. 1931), affirmed on opinion below, 108 N.J.L. 549 (E. & A. 1932). The broad proposition that `governing body' should always be deemed to signify the department head under the commission form of government quite obviously is untenable. One further example will suffice. Under the zoning statute, the recommendation for a variance made by the board of adjustment is subject to the approval or disapproval of `the governing body or board of public works.' N.J.S.A. 40:55-39(d). It could hardly be maintained that the director of the department to which the board of adjustment is assigned, was intended to be the approving authority." (30 N.J., at pages 375-376)
*511 In Kagan, the statute, N.J.S. 2A:8-5, provided that in municipalities other than ones governed by a mayor-council form of government the magistrate "shall be appointed * * * by the governing body of the municipality." Although recognizing that the Walsh Act, R.S. 40:72-4, spoke of the "executive, administrative, judicial and legislative powers, authority and duties" (emphasis added) of the municipality being distributed into and among five departments, the Supreme Court determined that the New Jersey Constitution, Art. VI, Sec. I, par. 1, insures that the municipal court and its magistrate will be independent of local government, and that the statute in question was designed to preserve this independence.
"* * * the power to appoint did not make the functions of a magistrate a phase of local government. Rather, in exercising the appointive power, the governing body acts merely as a statutory agent. See Monte v. Milat, 17 N.J. Super. 260, 265 (Law Div. 1952).
* * * The natural meaning of the term ["governing body"] is the board of commissioners. For the reasons stated, there is no incongruity with the provisions of the Walsh Act relating to the distribution of the powers possessed by local government and hence no basis for denying `governing body' its normal meaning. There is no apparent reason why the Legislature would have intended but one of the directors to exercise the power. On the contrary, if the appointment is to be made by a local authority, the board of commissioners, which is ultimately chargeable for the total local affairs, Grogan v. DeSapio, 11 N.J. 308, 321 (1953), is more logically the recipient of the responsibility than would be a single commissioner. * * *" (30 N.J. at pages 379-380)
Pashman v. Friedbauer, above, was clearly, if only impliedly, overruled.
The Local Housing Authorities Law clearly indicates that a local housing authority is not a municipal function, but is a separate independent entity which is "a body corporate and politic" created by the governing body of a municipality or county. It is an instrumentality of the municipality or county, exercising public and essential governmental functions, with, among other powers, power to *512 sue and be sued; to have perpetual succession; to make and execute contracts and other instruments necessary and convenient to the exercise of its powers; to prepare, carry out, acquire, lease and operate housing projects, and to provide for the construction, reconstruction, improvement, alteration or repair of any housing project; to lease or rent any property, lands or facilities embraced in any housing project, and establish and revise rents or charges therefor; to own and improve real or personal property; to acquire any real property by condemnation; to sell, lease, exchange, transfer, assign, pledge or dispose of any real or personal property or any interest therein; to invest any funds held in reserve or sinking funds, or any funds not required for immediate disbursement, in property or securities that are legal investments, etc. N.J.S.A. 55:14A-7. Thus, a local housing authority is not a subordinate municipal agency which must be assigned to any one department under the Walsh Act, or whose powers and duties can be said to be appropriate to one or the other department, within the meaning of R.S. 40:72-5. To the contrary, the Legislature did not want the Authority dominated by the governing body. It was to remain a separate corporate entity.
The comment of this court in State v. Parking Authority of Trenton, 29 N.J. Super. 335, 338 (App. Div. 1954), is apposite. We noted that N.J.S.A. 54:14A-4 declares that a housing authority shall constitute an agency or instrumentality of the municipality or county creating it, and went on to say
"The word `agency' has various meanings according to context. When used in governmental parlance it does not necessarily signify one who represents and takes orders from another. It has been held that a local housing authority created under the Local Housing Authorities Law (N.J.S.A. 55:14A-1 et seq.) is not a subordinate board of the municipality that established it. Monte v. Milat, 17 N.J. Super. 260 (Law Div. 1952). The term `agency and instrumentality' as used in the statute merely signifies the body or facility by means of which a governmental project is to be accomplished. For example, in contracting with the city the authority acts as a *513 principal. Were the authority merely an agent, a contract would be unnecessary. See Ciulla v. State, 191 Misc. 528, 77 N.Y.S.2d 545 (N.Y. Ct. Claims 1948)."
Accordingly, we hold that the Jersey City Housing Authority is an independent instrumentality of the municipality  a coordinate agency. Appointment to the Authority, where an appointment must be made, is lodged in the board of commissioners, which is more logically the recipient of the responsibility than would be a single commissioner.
We hold, as did the court in Kagan, that there is no incongruity between the provisions of the Local Housing Authorities Act and those of the Walsh Act relating to the distribution of the powers possessed by local government, and therefore no basis for denying "governing body" its normal meaning. As was held by Judge (now Justice) Proctor, in another context, in Monte v. Milat, 17 N.J. Super. 260, 265 (Law Div. 1952)
"* * * The fact that a housing authority can be created only by and with the consent of the governing body of a municipality and that the power of appointment and removal of its members is lodged with the municipality is indicative of the close relationship between the authority and the city, the latter naturally being interested in the result to be accomplished. But all that is entrusted to the municipality is the creation of the authority, not the delegation of its powers. The powers of the authority are derived, not from the municipality, but from the State, and the governing body of the municipality in deciding upon the desirability of creating an authority and in exercising the power of appointment and removal of its members is acting merely as a statutory agent. * * *"
Applying what was said in Kagan and Monte, we conclude that there is no suggestion, let alone any mandate, in the statute that the power to appoint to a local housing authority, or the very powers and duties of the authority itself, may be delegated to any one person; that in view of the federal and state housing acts, such delegation would be entirely inappropriate; and that a municipality, in creating and appointing members to its housing authority, merely *514 acts as the statutory agent of the Legislature and has no powers of delegation.
Plaintiff also argues that the omission from the quoted language of N.J.S.A. 55:14A-4 of the words "appoint by resolution" indicates that appointive action by the governing body as a whole is not required, but could be delegated to one commissioner. The sense of the statute must be taken from a reading of the whole. We have seen that N.J.S.A. 55:14A-3 defines "governing body" as the "common council or the board of commissioners or the body managing its affairs." And N.J.S.A. 55:14A-4 requires that a housing authority be formally created by the governing body by ordinance; that the governing body is to appoint five of the six commissioners and designate their respective terms. The remainder of this section of the statute speaks always in terms of action by the governing body. We would be completely unwarranted in so interpreting the statute as to hold that merely because there is no reference to action by resolution in appointing authority members, the appointive power may be delegated by the governing body to one of its members.
A governing body acts either by ordinance or resolution, and where the statute does not expressly require action by ordinance, the governing body may officially act by resolution. Fraser v. Teaneck Township, 1 N.J. 503, 507 (1949).
We hold that the Director of Public Affairs had no power to appoint plaintiff to the Jersey City Housing Authority. The board of commissioners correctly exercised the appointive power, in strict discharge of its legal authority, by appointing defendant McLaughlin.
Affirmed.