988 A.2d 1218 (2010)
412 N.J. Super. 105
CITY OF WILDWOOD, Plaintiff-Appellant/Cross-Respondent,
v.
Gary DEMARZO, Defendant-Respondent/Cross-Appellant.
Docket No. A-5250-08T1
Superior Court of New Jersey, Appellate Division.
Argued November 10, 2009.
Decided February 22, 2010.
*1219 Matthew T. Priore, Montvale, argued the cause for appellant/cross-respondent.
Samuel D. Lashman, Margate, argued the cause for respondent/cross-appellant.
Before Judges FUENTES, GILROY and SIMONELLI.
The opinion of the court was delivered by
*1220 FUENTES, J.A.D.
Plaintiff, City of Wildwood, is a municipality organized under the Walsh Act commission form of government, N.J.S.A. 40:70-1 to N.J.S.A. 40:76-27. Defendant, Gary DeMarzo, was elected to serve as one of three commissioners of the City's governing body. DeMarzo took the oath of office as a City Commissioner while on an unpaid leave of absence from his other municipal position as a Wildwood police officer.
The parties agree, and the trial court recognized, that these two municipal positions are incompatible under the common law doctrine of incompatibility. Despite this legal impediment, the trial court denied the City's petition to compel DeMarzo to choose which municipal position he wanted to retain and which position he would forgo. Instead, the court crafted a series of judicially imposed restrictions upon DeMarzo's conduct as a Commissioner and enjoined him from involving himself in areas the court determined would create a conflict between his public responsibilities as a Commissioner and his interests as a police officer.
The City appeals from the trial court's decision arguing that the restraints on DeMarzo's conduct do not adequately address the inherent conflicts arising from the incompatibility of the two offices. We agree with the City's position and reverse.
The trial court erred in permitting DeMarzo to continue to hold two incompatible public offices in the same municipality. The court's attempts at counteracting the myriad of conflicts arising from such incompatibility by restricting DeMarzo's conduct as a city commissioner impermissibly limited the statutory authority conferred upon such office by the Legislature under the Walsh Act, and deprived the citizens of Wildwood of an independent City Commissioner capable of managing the municipality's business unfettered by personal conflicts arising from his position as a police officer.

I

A
Before we review the particular facts of this case, we will first describe in some detail the City's form of government. We do this to demonstrate the unfeasibility of the restraints imposed by the trial court upon DeMarzo as he attempted to discharge his duties as one of three municipal commissioners.
As noted, the City's municipal government is organized under the Walsh Act, denoted by the Legislature as "the commission form of government law." N.J.S.A. 40:70-1. Under this form of government, the municipal governing body consists of a board of commissioners having "all the executive, administrative, judicial[1] and legislative powers and duties heretofore had and exercised by the mayor and city council and all other executive or legislative bodies in such municipality, and shall have complete control over the affairs of such municipality." N.J.S.A. 40:72-2.
Unlike the conventional paradigm of governance that adheres to the doctrine of separation of powers, the commission form of government does not separate *1221 the legislative function of a city council from the executive authority conferred upon a chief executive like a mayor. See Eggers v. Kenny, 15 N.J. 107, 120-21, 104 A.2d 10 (1954) (noting that "[w]hile the separation doctrine is applicable to the Federal Government and to our State Government, it generally has no applicability to our city governments"). Stated differently, the commission form of government runs counter to our Republic's well-established model of governance by vesting the board of commissioners with complete authority over all municipal affairs, except the municipal court. Bd. of Trustees v. Union City, 112 N.J.Super. 484, 490-91, 271 A.2d 728 (Ch.Div.1970), aff'd, 116 N.J.Super. 186, 281 A.2d 397 (App.Div. 1971).
The public policy underpinning this concentration of power into a unitary municipal governing body was best expressed by the Court in Grogan v. DeSapio, 11 N.J. 308, 317, 322, 94 A.2d 316 (1953):
The paramount philosophy of the Walsh Act was to promote efficient government upon the premise that it would be better induced by holding the members of the commission to an individual responsibility rather than party responsibility.
. . . .
In the application of these principles we must therefore consider the initial purposes of the Walsh Act. These were to centralize municipal powers in the board of commissioners, a governing body to be composed of qualified men divorced from partisan obligations, and to provide economical government. As we have demonstrated[,] these purposes were not merely within the theory and spirit of the concept of the commission form of government, but were expressed in statutory language that has remained unaltered by the Legislature from 1911 to the present time. Implementing these altruistic purposes were the provisions of the statute providing for specific departments and allocation thereto of "appropriate" powers and duties by the commissioners.
The number of commissioners who serve on a board may be three or five, depending on the municipality's population. N.J.S.A. 40:72-1. Here, because Wildwood has less than twelve thousand inhabitants, the board of commissioners consists of three members. Ibid. The board of commissioners is structured and divided into as many as five, but no less than three, administrative departments. N.J.S.A. 40:72-4. These departments compartmentalize municipal authority by establishing jurisdictional limits and areas of responsibility.
The executive, administrative, judicial and legislative powers, authority and duties in such municipality shall be distributed into and among five departments, except that in municipalities having but three commissioners, three departments shall be designated and provided by the consolidation of the first and third departments and the fourth and fifth departments as follows:

1. Department of public affairs.
2. Department of revenue and finance.
3. Department of public safety.
4. Department of public works.
5. Department of parks and public property.
[N.J.S.A. 40:72-4 (emphasis added).]
The jurisdiction or scope of authority for each of the departments is determined by the board of commissioners. N.J.S.A. 40:72-5. This occurs at the first regular meeting after the election of the board. N.J.S.A. 40:72-6. At this organizational meeting, the newly elected commissioners
designate by majority vote one commissioner to be director of the department of public affairs, one commissioner to be director of revenue and finance, one to *1222 be director of the department of public safety, one to be director of the department of public works, and one to be director of the department of parks and public property, except that upon the organization of a board of three commissioners, but three departments shall be designated, as hereinbefore in section [N.J.S.A.] 40:72-4 of this title provided and but three directors voted therefor. Such designation may be changed whenever it appears that the public service would be benefited thereby.
The mayor may be designated director of such department as a majority of the members of the commission shall determine.
[Ibid.]
A commissioner is thus: (1) a legislator when he or she proposes and votes on municipal legislation; (2) an executive when he or she hires and supervises the staff who perform the day-to-day operations of the department assigned to him or her by the board; and (3) a quasi-judicial officer when the board sits as an administrative tribunal to adjudicate disputes arising from disciplinary matters, violations of municipal licenses, and other similar matters.

B
With this governance structure in mind, we now turn to the particular facts under review here.
On February 10, 1998, the City hired DeMarzo as a full-time police officer with all of the rights and protections afforded to such a position under N.J.S.A. 40A:14-147. In this capacity, DeMarzo became a member of the Fraternal Order of Police (FOP), the collective bargaining agent for the rank and file officers in the City; he was later elected by his fellow officers to be a representative for the local FOP.
In 2005, DeMarzo filed two suits against the City. The first suit was directed against Wildwood and other residents who were not affiliated or employed by the City. The second suit named the City, the three commissioners sitting at the time, and a number of other appointed officials.
In the first suit,[2] DeMarzo and his wife sought compensatory damages regarding damage to a bulkhead located on their property. The City's attorney filed a responsive pleading on behalf of Wildwood. The case thereafter settled for the gross amount of $40,000; a general release was executed by DeMarzo on November 12, 2008, requiring the City to pay $8000 of the gross settlement amount.[3]
On October 28, 2005, DeMarzo filed the second suit alleging a violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. DeMarzo named as defendants the City, the then Mayor/Commissioner Ernie Troiano, Commissioner Kathy Breuss, Commissioner Frederick G. Wagner who served as the Director of the Department of Public Safety, the chief of police, two police captains, two police lieutenants, and a patrol officer.[4] DeMarzo alleged that the named defendants, acting in their official capacity, individually and in concert, engaged in a campaign of unlawful retaliation against him because of his unwillingness to give preferential treatment to a member of Commissioner Breuss's family. The suit sought compensatory, consequential, and punitive damages against the City and the named public officials.
*1223 In March 2007, the parties to the CEPA case entered into a stipulation of dismissal without prejudice. Among the terms of the agreement, the parties
recognized and agreed that because there are two disciplinary processes currently pending at different stages of the disciplinary action process (namely, a ninety (90) days suspension and five (5) days suspension), in addition to this Conscientious Employee Protection Act claim,
. . . .
Plaintiffs may file a new complaint in the Superior Court either:
a. within sixty (60) days of a final order from either the ninety (90) days suspension or five (5) days suspension disciplinary processes, whichever is rendered last; or
b. when either Plaintiff, Gary DeMarzo, or the City of Wildwood certifies that he or they have no intention of further appealing the ninety (90) days suspension or five (5) days suspension disciplinary processes; or
c. when Plaintiff, [Gary DeMarzo] or his counsel, are relatively confident that the two disciplinary processes referred to herein will be deemed final within the time frame assigned to complete discovery in a newly-filed civil complaint, without prejudice to, and subject [to], the City of Wildwood's right to appeal.
DeMarzo was elected a Commissioner of the City of Wildwood on May 8, 2007, approximately six weeks after he signed the stipulation dismissing the CEPA suit. Sometime before taking the oath of office on May 15, 2007, DeMarzo applied for and was granted an unpaid leave of absence from his position as a police officer. Both parties and the trial court cite N.J.S.A. 11A:6-14 as authority for such a leave.
N.J.S.A. 11A:6-14 reads as follows:
Any person holding a position in the career service of any political subdivision shall upon written request be granted a leave of absence, without pay, to fill any elective public office for the term of the office. Upon the expiration of the term of office, that person shall be entitled to resume the position held at the time of the granting of the leave of absence, if the employee shall apply for reinstatement before the expiration of the leave of absence and return to duty within six years after the commencement of the leave. The time spent in serving the term of an elective office, up to a maximum of six years from the commencement of the leave, shall be included in the computation of that person's seniority rights.
All appointments to the position of that person during the period of six years from the date the leave of absence commences shall be made from eligible lists and the appointments shall, during such six-year period, be held to be interim and shall be terminated on the return to duty within the six-year period of the person to whom the leave of absence was granted.
In the event that the term of the elective public office of the person to whom such leave was granted expires after six years from the commencement of such leave, the name of such person, upon the expiration of the six-year period, shall be placed on a special reemployment list.
On its face, N.J.S.A. 11A:6-14 clearly identifies the basis for requesting leave to fill an elective public office, explains that the nature of the leave is without pay, sets a strict six-year limit on the length of the leave, secures seniority rights in the position temporarily vacated, and protects the employee requesting the leave from losing the position by requiring that appointments to the vacated position be made *1224 from "eligible lists," characterized as "interim appointments," which "shall be terminated on the return to duty within the six-year period of the person to whom the leave of absence was granted." Ibid. Finally, if the term of the elective office exceeds six years, then, at the expiration of the original six-year leave, the name of the person on leave "shall be placed on a special reemployment list." Ibid.
These carefully delineated statutory protections are intended to benefit both the recipient of the leave and the governmental employer. It protects the employee on leave by securing seniority rights that may have a significant impact on the employee's ability to survive a future reduction in the work force or other employment displacement. It protects the employer by setting clear time limits on the length of the leave. Finally, the statute promotes the public policy of encouraging those citizens in public employment to seek elective office. Nothing in this statute, however, implies any derogation from the well-established principles embodied in the common law doctrine of incompatibility.
Finally, despite the parties' reliance on N.J.S.A. 11A:6-14, we note that N.J.S.A. 11A:6-9 provides that: "Leaves of absence for police officer and fire fighter titles shall be governed by the applicable provisions of Title 40A of the New Jersey Statutes and [N.J.S.A.] 11A:6-10." Under N.J.S.A. 40A:14-136, a police officer is only entitled to request a leave of absence "in order that his services may be available to the State or a county, or to a State or county department or agency." See also Canavera v. Township of Edison, 271 N.J.Super. 125, 129, 638 A.2d 160 (App.Div.1994).
Thus, there appears to be a conflict between N.J.S.A. 11A:6-14, which allows "any person holding a position in the career service of any political subdivision" to receive a leave of absence to serve in an elective office, and N.J.S.A. 40A:13-136, which restricts a police officer's leave of absence to allow service only in State and county governments. It is a well-established rule of statutory construction that when two statutes conflict, the more specific one controls. New Jersey Transit Corp. v. Borough of Somerville, 139 N.J. 582, 591, 661 A.2d 778 (1995). If we adhere to this interpretive principle, N.J.S.A. 40A:13-136 would control here because: (1) N.J.S.A. 11A:6-9 expressly provides that leaves of absences for police officers are governed by Title 40A; and (2) N.J.S.A. 40A:13-136 specifically limits the types of leaves of absence available to police officers.
That being said, however, we are satisfied that the provisions of N.J.S.A. 11A:6-14 govern here because it explicitly authorizes leaves of absence "to fill any elective public office for the term of the office." N.J.S.A. 11A:6-14. This specific reference to "elective public office" is not within the scope of the permissive language used in N.J.S.A. 40A:14-136, and therefore, does not contravene the mandate in N.J.S.A. 11A:6-9 to look to Title 40A when the leave at issue involves a police officer or firefighter. Our conclusion is buttressed by N.J.A.C. 4A:6-1.17, a regulation promulgated by the Civil Service Commission which mirrors the language used by the Legislature in N.J.S.A. 11A:6-14; N.J.A.C. 4A:6-1.17 grants a leave of absence without pay to a permanent employee in local service to fill an elective public office for the term of the office.

C
By letter dated May 9, 2007, the City's attorney advised the Board of Commissioners that, in his opinion, DeMarzo could not serve as a commissioner while on leave from his position as a police officer. Counsel *1225 recommended that the City retain special counsel to prosecute a declaratory judgment action to definitively address the matter. By letter dated May 14, 2007, the City's special counsel wrote to then Commissioner-Elect DeMarzo explaining why he believed the two positions were legally incompatible. Counsel concluded the opinion letter with the following admonition:
I ... strongly caution that if you were permitted to serve as commissioner while on unpaid leave of absence from the Wildwood Police Department, there would be a myriad of situations which would result in conflicts of interest which would require recusal on a case-by-case basis. In fact, there may be so many conflicts that it could render you almost ineffective in your position as Commissioner. Should you elect to attempt to invoke the provisions of [N.J.S.A. 11A:6-14], I would suggest that you immediately consult with your Municipal Attorney to discuss which areas would result in conflicts of interest requiring your recusal. Failure to properly recuse yourself could compromise votes and official actions of the City of Wildwood, which would also be unfair to the public.
DeMarzo thereafter took the oath of office as Commissioner while on unpaid leave from his position in the police department.

D
On May 18, 2007, the City filed a declaratory judgment action seeking a judicial determination that DeMarzo's service as commissioner was incompatible with his position as a police officer on unpaid leave from the City's police department. The complaint sought an order compelling DeMarzo to choose between the two positions. Alternatively, the City sought a clarification of the parameters of DeMarzo's service as Commissioner. In response, DeMarzo conceded that the two positions are legally incompatible. However, he argued that his unpaid leave of absence from his police officer position cured, or at least sufficiently mitigated, any harm arising from this inherent incompatibility. DeMarzo planned to address any conflicts that may arise on a case-by-case basis.
In a written opinion dated July 13, 2007, the Law Division Judge assigned to the case determined that:
DeMarzo may serve as a Commissioner for the City of Wildwood while on leave of absence from the Wildwood Police Department subject to the recusals set out in this Court's Order of July 13, 2007. With the leave of absence in place there is no longer a conflict in duties between the two offices. Commissioner DeMarzo will not have any duties as a Police Officer while on leave of absence. However, [he] cannot participate in any matter directly related to the Police Department or the FOP because potential conflicts of interest exist.
The accompanying order directed DeMarzo, in his capacity as Commissioner, to recuse himself:
on all issues relating to budget items, conditions, terms, salary, benefits, discipline, contracts and litigation relating to and involving the Wildwood Police Department and all members thereof, the Fraternal Order of Police Local Bargaining Unit (Lodge # 7) and/or involving all other Wildwood City Employees working under a collective bargaining agreement[,] including but not limited to the UAW Local 2327 and FMBA Local 50; and ... from all matters involving appointments and compensation of the Municipal Judge, Municipal Prosecutor, Public Defender and/or their firms; and... from all matters dealing with the funding of any budgetary line item relating to matters of litigation that directly *1226 or indirectly affect the Wildwood Police Department....
The court also ordered the
Municipal Solicitor and the Municipal Clerk [to] meet prior to every meeting of the Governing Body in order to review the agenda of the proposed meeting to determine which items constitute a conflict for [DeMarzo] and must be therefore voted upon separately by the remaining members of the Governing Body....
Anticipating the need to provide an expedited process to address the myriad of potential conflicts that may arise from the multitude of matters that come before a municipal governing body, the court
strongly recommend[ed] that the City appoint a capable, neutral arbiter to issue a binding decision as to any alleged conflict issues; and ... that all matters of discipline as to Commissioner DeMarzo and any conflict alleged therein be brought before the arbiter, if one is appointed, and if not before this Court on a Motion; and ... that all litigation involving Commissioner DeMarzo individually also be brought before the arbiter if one is appointed, and if not on a Motion before the Court in which the action is filed for a determination as to any conflict for the Court to decide whether there is a conflict, and if there is, how each case may or may not proceed to a conclusion.
These restraints, and the procedures established to address disputes arising from them, inexorably injected the court into the day-to-day affairs of this City's government and fueled the parties' adversarial relationship. In numerous letters, DeMarzo and the City Solicitor accused each other of misconduct and questioned each other's motives and authority to act in furtherance of the public's interest. This pattern was repeated in exchanges between DeMarzo and his two fellow Commissioners.
By way of example, soon after taking his oath of office as Commissioner of the Department of Revenue and Finance, DeMarzo questioned the chief financial officer (CFO) concerning the manner in which the City calculated overtime pay. In response, the CFO indicated that the City's overtime rate had been calculated incorrectly. DeMarzo's inquiry to the CFO, which led to the discovery of this error, was generic in nature and did not mention any specific City department. Although this matter appears to be well within the jurisdiction of DeMarzo's department, the City Solicitor wrote to DeMarzo to criticize his inquiries into "issues regarding longevity" because "they directly deal with police issues."
The situation reached its foreseeable climax when the chief of police filed a series of disciplinary complaints against "patrolman" DeMarzo in response to the letters he wrote, which were critical of the chief and other high ranking officers in the police department. DeMarzo wrote these letters on City stationery while acting within his capacity as Commissioner of the Department of Revenue and Finance.

E
The parties returned to the Law Division on March 20, 2009, by way of the City's motion to enforce litigant's rights, requesting that DeMarzo be declared in violation of the court's order of July 13, 2007. Because the Judge who issued that order had retired, the City's motion was heard by a different Judge.
Given the record showing the inefficacy of the judicial restraints on DeMarzo's conduct, the City also petitioned the court to reverse its earlier ruling which permitted DeMarzo to continue to hold two admittedly incompatible public offices. Alternatively, *1227 the City requested that the court include issues concerning the office of Municipal Solicitor among the matters DeMarzo is prohibited from voting on or overseeing.
After reviewing the record and considering the arguments of counsel, the Law Division denied the City's request to enjoin DeMarzo from voting on matters involving the Municipal Solicitor and stayed all disciplinary actions against DeMarzo as a police officer until he is no longer a Commissioner.
With respect to the civil actions filed by DeMarzo against the City, the trial judge determined that the agreed-upon settlement was final as to all parties except the City. The $8000 portion of the settlement, representing the City's obligation, would only be paid to DeMarzo if he resigned from his commissioner position. Absent DeMarzo's resignation, the litigation against the City would be dismissed without prejudice and the $8000 settlement would be submitted to the Board for approval. If approved, the litigation would be dismissed with prejudice; otherwise DeMarzo had the right to re-file his claim within sixty days of the Board's rejection. DeMarzo's failure to refile his claim within the sixty day period would result in a dismissal of his claim with prejudice.
Because the CEPA suit had been dismissed by the parties without prejudice, subject to reinstatement by stipulation, the trial court restrained the reinstitution of the complaint for as long as DeMarzo continued to hold the office of commissioner. The complaint may be re-filed within sixty days after DeMarzo vacates the office of commissioner. The complaint would be dismissed with prejudice if it was not re-filed within this time frame.

II
We start our analysis by noting that neither the United States Constitution nor our State Constitution prohibits an individual from holding two offices within the same municipality. DeFeo v. Smith, 17 N.J. 183, 186, 110 A.2d 553 (1955). The Legislature, however, has recently enacted specific prohibitions against the long-established, but much criticized, practice of dual office-holding. In so doing, the Legislature also specifically authorized the simultaneous holding of county and municipal appointive positions by certain individuals holding elective positions.
Effective February 1, 2008, the Legislature prohibited the practice of holding an elective county office and an elective municipal office at the same time. N.J.S.A. 40A:9-4(1). Members of the Legislature are also prohibited from simultaneously holding any other elective office. N.J.S.A. 19:3-5.2a. These restrictions do not apply to those contemporaneously holding such positions before the effective date of these Acts. N.J.S.A. 40A:9-4(5); N.J.S.A. 19:3-5.2b. Additionally, it is lawful for members of the Legislature to simultaneously hold "any appointive office or position in county or municipal government." N.J.S.A. 40A:9-4(2). Furthermore, effective January 15, 2010, it is lawful for volunteers of emergency services providers to also "serve as an elected official on the governing body of the municipal government wherein the emergency services are provided; however, the volunteer shall recuse himself from any vote concerning the emergency services provider of which he is a member." N.J.S.A. 40A:9-4(6).
We have listed these statutory changes to illustrate that when the Legislature wants to address the area of dual office-holding, whether elective or appointive, it does so clearly and directly. For this, as well as the other reasons expressed herein, we reject the argument that by enacting N.J.S.A. 11A:6-14 the Legislature implicitly *1228 intended to derogate from the common law doctrine of incompatibility. As discussed infra, N.J.S.A. 11A:6-14 only authorizes a leave of absence for a specific purpose.
We turn next to the doctrine of incompatibility, the earliest and most accepted description of which is found in State ex rel. Clawson v. Thompson, 20 N.J.L. 689, 689-90 (Sup.Ct.1846):
Where there is no express provision, the true test is, whether the two offices are incompatible in their natures, in the rights, duties, or obligations connected with or flowing out of them. Offices ... are incompatible or inconsistent, when they cannot be executed by the same person; or when they cannot be executed with care, and ability; or where one is subordinate to, or interferes with another,... [o]r where one office is under the control of another.
A more modern expression of the doctrine is set forth in Reilly v. Ozzard, 33 N.J. 529, 543, 166 A.2d 360 (1960):
Incompatibility is usually understood to mean a conflict or inconsistency in the functions of an office. It is found where in the established governmental scheme one office is subordinate to another, or subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation to another.
In Jones v. MacDonald, the Court succinctly articulated the public policy underpinning such a prohibition:
Public policy demands that an office holder discharge his duties with undivided loyalty. The doctrine of incompatibility is intended to assure performance of that quality. Its applicability does not turn upon the integrity of the person concerned or his individual capacity to achieve impartiality, for inquiries of that kind would be too subtle to be rewarding. The doctrine applies inexorably if the offices come within it, no matter how worthy the officer's purpose or extraordinary his talent.
[33 N.J. 132, 135 (1960) (internal citation omitted).]
Here, both parties and the trial court agreed that the position of municipal police officer is incompatible with the elective office of City Commissioner within the same municipality. In addition to being uncontested, we are satisfied that this conclusion is supported by the reported decisions that have addressed this question under similar factual circumstances. Dunn v. Froehlich, 155 N.J.Super. 249, 382 A.2d 686 (App.Div.1978) (holding that police officer and councilman are incompatible positions, requiring the person holding such offices to choose which one to retain); Kaufman v. Pannuccio, 121 N.J.Super. 27, 31, 295 A.2d 639 (App.Div.), certif. denied, 62 N.J. 192, 299 A.2d 726 (1972) (holding that positions of police lieutenant and municipal council member are incompatible); O'Connor v. Calandrillo, 117 N.J.Super. 586, 588, 592, 285 A.2d 275 (Law Div.1971), aff'd, 121 N.J.Super. 135, 296 A.2d 326 (App.Div.1972), certif. denied, 62 N.J. 193, 299 A.2d 727, cert. denied, 412 U.S. 940, 93 S.Ct. 2775, 37 L.Ed.2d 399 (1973) (holding that city commissioner and police sergeant are incompatible positions).
Here, the trial court's error lies in its attempt to cure or ameliorate the consequences of incompatibility by fashioning a series of judicial restraints that diluted the statutory authority conferred by the Legislature upon the office of Commissioner under the Walsh Act. Consequently, the trial court's actions deprived the citizens of Wildwood of a fully functional member of the municipal governing body. As our analysis of the commission form of governance under the Walsh Act infra demonstrates, the unique concentration of authority conferred by the Legislature upon the office of commissioner renders *1229 the court's actions here particularly ill-advised. Under the Walsh Act, a commissioner is the chief administrator of the department assigned to him or her by the board; a commissioner is responsible for executing and overseeing all of the administrative functions associated with that department. N.J.S.A. 40:72-6; N.J.S.A. 40:72-6.1.
Although each department has clear areas of authority and responsibilities, they do not function as watertight compartments. By statutory design and practical necessity, each commissioner-headed department must interact with members of the municipality's general workforce. In this capacity, the individual commissioner does not work in isolation; all of the commissioners must work together as a part of the executive team comprising the municipal governing board.
The incident involving the method for calculating overtime compensation for municipal employees illustrates how one department's function affects the other departments. As Commissioner of Revenue and Finance, DeMarzo was well within his sphere of authority to question this area of expenditure. However, because this payment methodology affected all municipal employees, the entire pay structure was affected, including the police department. The conflict created by DeMarzo's dual office-holding immediately revealed itself, prompting the municipal solicitor to warn DeMarzo that his conduct may be viewed as contravening the court's restraints. This is the precise evil the doctrine of incompatibility is intended to avoid. As we noted in Dunn:
When such a statutory conflict of duties exists, it is not enough ... for the officeholder to disqualify himself when the conflict arises or to decline to act in the areas of conflict. The doctrine was designed to avoid the necessity for such an option, and the admitted need for such inaction is the most compelling proof that an incompatibility exists.
[Dunn, supra, 155 N.J.Super. at 253, 382 A.2d 686.]
The judicial restraints imposed by the Law Division here are practically unworkable and legally untenable as they prevent Commissioner DeMarzo from inquiring into areas that are legitimately within his authority and responsibility because such inquires may affect his other position as a police officer. The restraints also unduly entangle the court with the affairs of this municipal government by providing for judicial oversight of DeMarzo's conduct as commissioner. Specifically, the court ordered the municipal solicitor and city clerk to "meet prior to every meeting of the Governing Board in order to review the agenda of the proposed meeting to determine which items constitute a conflict for [DeMarzo] and must be therefore voted upon separately by the remaining [two] members of the Governing Body...." Any disagreement as to what constitutes a conflict would be decided by the court in a motion brought by either party.
Requiring the municipal clerk and city solicitor to meet before every board meeting to determine whether any item on the board's agenda may mandate DeMarzo's recusal is utterly unworkable as a practical matter. To permit DeMarzo or the City to seek a judicial resolution of any conflict arising from this procedure by way of a motion to enforce litigant's rights is untenable as a matter of law and public policy. Municipal government cannot function by motion practice. This kind of judicial oversight is inimical to the doctrine of separation of powers because it invites judicial intervention into the municipality's operations on a regular basis; it is akin to judicial micromanagement of a coordinate branch of government. See Commc'ns *1230 Workers of Am., AFL-CIO v. Florio, 130 N.J. 439, 461, 617 A.2d 223 (1992).
We must now consider what is the appropriate remedy. Under a strict application of the common law, acceptance of another incompatible office automatically vacates the first one. DeFeo, supra, 17 N.J. at 190, 110 A.2d 553. Thus, in this case, it can be argued that DeMarzo vacated or resigned from his position as a police officer when he accepted the position of commissioner. We are satisfied, however, that such an inflexible application of the common law is not warranted here. In the absence of bad faith, "it is just and consonant with the public welfare" to permit the dual office-holder to elect which office he or she wishes to retain. McDonough v. Roach, 35 N.J. 153, 159, 171 A.2d 307 (1961).
We have no evidence that suggests that DeMarzo's legal position was advanced in bad faith. Indeed, two trial judges have ruled in his favor and attempted to fashion remedies consistent with his legal position. We thus conclude that the interests of justice will be served by permitting DeMarzo to choose which position he wants to retain. Having said this, we are equally convinced that it is in the best interests of the citizens of Wildwood to have this matter settled expeditiously.

III
The judgment of the Law Division dated April 29, 2009, reaffirming its prior order dated July 13, 2007, which permitted DeMarzo to hold the position of Wildwood Commissioner while on an unpaid leave of absence from his position as a Wildwood police officer under N.J.S.A. 11A:6-14, is reversed. These two public positions are incompatible under the common law. Judicial restraints on DeMarzo's conduct as commissioner which were intended to cure or ameliorate the consequences of such incompatibility, impermissibly diluted the powers of the office of commissioner under the Walsh Act and entangled the trial court into the day-to-day affairs of the municipality in violation of the doctrine of separation of powers.
The section of the court's April 29, 2009, order pertaining to the matters of DeMarzo v. Craig, No. CPM-L-552-5, and DeMarzo v. City of Wildwood, No. CPM-L-605-05/ATL-L-2624-06 are affirmed and shall be implemented when DeMarzo no longer holds the office of commissioner.
DeMarzo has twenty days from the date of this opinion to choose whether he wants to retain the appointed office of Wildwood police officer or give up that office and retain the elected office of commissioner. DeMarzo shall communicate his choice in writing directly to the board of commissioners within the specified timeframe.
Affirmed in part, and reversed in part. We do not retain jurisdiction.
NOTES
[1] The reference to "judicial power" in N.J.S.A. 40:72-2 is limited to the "judicial functions incidental to the internal affairs or administrative functions of the municipality." Kagan v. Caroselli, 30 N.J. 371, 378, 153 A.2d 17 (1959). This power does not vest the board of commissioners with the judicial power and duty of the municipal court. Ibid. Under Article VI, Section I, paragraph 1 of our State Constitution, municipal courts are part of the judicial branch as "inferior courts of limited jurisdiction," and are under the exclusive and plenary authority of our State Supreme Court. Id. at 377, 153 A.2d 17.
[2] DeMarzo v. Craig, No. CPM-L-552-5.
[3] Based on the Supreme Court's decision in Thompson v. Atlantic City, 190 N.J. 359, 921 A.2d 427 (2007), the board of commissioners decided not to execute the release pending the outcome of this appeal.
[4] DeMarzo v. City of Wildwood, No. CPM-L-605-05/ATL-L-2624-06.