48 A.3d 378

G.D.M. AND T.A.M., INDIVIDUALLY AND ON BEHALF OF MINOR CHILD B.M.M., PETITIONERS–RESPONDENTS/CROSS–APPELLANTS, v. BOARD OF EDUCATION OF THE RAMAPO INDIAN HILLS REGIONAL HIGH SCHOOL DISTRICT, BERGEN COUNTY, RESPONDENT–APPELLANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 21, 2012—Decided July 24, 2012.

Before Judges FUENTES, KOBLITZ and HAAS.

*Stephen R. Fogarty* argued the cause for appellant/cross-respondent (*Fogarty & Hara*, attorneys; *Mr. Fogarty*, of counsel; *Mr. Fogarty* and *Cameron R. Morgan*, on the briefs).

*Gregory D. Meese* argued the cause for respondents/cross-appellants (*Price, Meese, Shulman & D'Arminio, P.C.*, attorneys; *Mr. Meese*, of counsel and on the briefs).

*Jeffrey S. Chiesa*, Attorney General, attorney for respondent Acting Commissioner of Education (*Christopher Huber*, Deputy Attorney General, on the statement in lieu of brief).

*Joseph F. Betley* argued the cause for amicus curiae Haddonfield Board of Education (*Capehart & Scatchard, P.A.*, attorneys; *Mr. Betley* and *Kelly M. Estevam*, on the brief).

*Edward J. Sholinsky* argued the cause for amicus curiae American Civil Liberties Union of New Jersey (*Schnader Harrison Segal & Lewis LLP*, attorneys; *Mr. Sholinsky*, on the brief).

*Beth L. Finkelstein* argued the cause for amicus curiae New Jersey Association of School Administrators.

*Cynthia J. Jahn,* General Counsel, attorney for amicus curiae New Jersey School Boards Association (*Ms. Jahn* and *Donna M. Kaye,* Senior Associate Counsel, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

This appeal presents a facial challenge to the validity of a regulation promulgated by the Board of Education of the Ramapo Indian Hills Regional High School District (Board) that seeks to control student conduct not only at school or during school-related functions and activities, but at all other times and places. Regulation 6145, entitled "Extracurricular Activities," asserts this control by conditioning student participation in extracurricular activities on compliance with a specifically enumerated code of student conduct. Among the behaviors that may result in suspension from extracurricular activities is a student's arrest for an alleged violation of a criminal statute or municipal ordinance. The regulation does not require a nexus between the alleged violation of law and school order or safety.

■ Petitioners G.D.M. and T.A.M. brought this action on behalf of themselves and their minor daughter B.M.M., arguing that Regulation 6145 violates State Department of Education regulations and constitutes an unconstitutional infringement of their right to privacy, as well as their daughter's right against self-incrimination and to a thorough and efficient education under Article VIII, section 4, paragraph 1, of the New Jersey Constitution. The then Acting Commissioner of Education (Commissioner) found that Regulation 6145 exceeded the authority conferred upon local school boards to regulate student conduct under *N.J.A.C.* 6A:16–7.1 and *N.J.A.C.* 6A:16–7.6. The Commissioner thus invalidated Regulation 6145 and directed the Board to revise its student disciplinary policy to comply with the prevailing state regulatory

scheme.[1]

On appeal to this court, the Board argues that the Commissioner misconstrued State Board Education regulations because the only sanction imposed for a violation of Regulation 6145 is the loss of a privilege, which enjoys no special protection under the law. Petitioners cross-appeal, arguing that the Commissioner should have considered and decided their constitutional claims. We subsequently granted the motions of the American Civil Liberties Union of New Jersey (ACLU), the Haddonfield Board of Education (HBE), the New Jersey Association of School Administrators (NJASA), and the New Jersey School Boards Association (NJSBA) to appear as amici curiae in this matter.

After considering the record developed before the Commissioner, and mindful of the prevailing standard of review, we affirm. Regulation 6145 is facially overbroad and exceeds the authority conferred upon boards of education by state statutes and regulations. Because petitioners prevailed in their legal challenge on these grounds, we decline to consider the alternative constitutional bases for invalidating Regulation 6145 advanced by petitioners in their cross-appeal.

I

Commencing in 2007, the Board proposed a regulation granting the school district the authority to "revoke a student's privilege to participate in extracurricular activities based upon illegal conduct. . . ." The Board was particularly concerned with the con-

---

[1] While this appeal was pending, the Board revised its student disciplinary policy to conform with the Commissioner's decision. The Board nonetheless continued to pursue this appeal because it intends to reinstate Regulation 6145 if it prevails. Although it can be argued that the Board's action rendered this appeal moot, we have decided to address the merits of the arguments raised by the parties because the legal questions under review concern matters of substantial public importance, *In re Geraghty*, 68 *N.J.* 209, 212, 343 *A.2d* 737 (1975), and are capable of repetition, *Gilbert v. Gladden*, 87 *N.J.* 275, 295–96, 432 *A.2d* 1351 (1981).

sumption, possession, and distribution of illicit drugs and alcohol by students "occurring outside of school property." Responding in part to "a number of incidents in which ... students had engaged in dangerous and illegal drugs and alcohol related behaviors," the Board conducted "numerous public hearings between 2007 and 2009" to solicit input from the community.

In a certification submitted in this case, Lauren Schoen, the Superintendent of Schools for the Ramapo Indian Hills Regional High School District, averred that "the vast majority of involved students, parents, educators and extracurricular activity coaches, advisors, coordinators and participants" responded to the Board's outreach efforts during this two-year period, and the proposed regulation "received community-wide support." [2]

The Board adopted Regulation 6145 at a regular meeting held on June 22, 2009. Entitled "Extracurricular Activities," Regulation 6145 provides in pertinent part:

*Introduction:*

Participation in Board-sponsored extracurricular activities is a privilege enjoyed only by students in good academic and disciplinary standing. This privilege is earned through compliance with all applicable rules and regulations. This policy is intended to be a positive statement in support of our students as they strive to remain free of all drugs and alcohol as required by state law. This policy also encourages a student to maintain good attendance and grades, abide by all school rules, and to be a good citizen. The Board has the authority to restrict or revoke a student's privilege to participate in extracurricular activities.

The consequences set forth in this Policy and Regulation relate solely to limiting the opportunity of any student found to be in violation of this Policy or Regulation to participate in Board-sponsored extracurricular activities.

. . . .

*Conduct Requirements:*

1. *General Behavioral Expectations:*
 a. Students are expected to comply with all of the Board's policies and regulations at all times . . . .
 b. Students are required to conform to reasonable standards of acceptable behavior, to respect the rights, person and property of others, to preserve the

---

[2] Although not relevant to our disposition, in the interest of completeness we note that petitioners have certified that the Board adopted Regulation 6145 "despite overwhelming public opposition to the Regulation."

degree of order necessary for the conduct of the educational program, and to obey those in authority.

 c. Students shall not engage in activities that constitute criminal offenses or juvenile delinquency as defined by law.

2. *Use of Alcoholic Beverages and/or Drugs:*

 a. **Expectations:** All student participants in Board-sponsored extracurricular activities must refrain from the use, possession or distribution of any alcoholic beverage or other drugs (unless prescribed by a physician) *both on and off school grounds,* during the season or activity in which the student wishes to participate in the extracurricular activity.

*Consequences for Violations of Conduct Requirements:*

1. Alleged violations of the above behavioral expectations occurring on school grounds and/or at school sponsored events will be reported by [a] supervising staff member to the building administrator. With respect to conduct occurring away from school grounds/events, an alleged violation of the above conduct requirements shall occur if a student is formally charged and/or arrested by law enforcement for an alleged violation of the New Jersey Code of Criminal Justice, and/or applicable municipal codes or ordinance provisions.

2. Following notification of a student's alleged violation, the building administrator shall conduct a conference with the student and his/her parents, which shall include the student assistance counselor ("SAC") and other district personnel, as appropriate, at which time the student shall be provided the opportunity to address the alleged violation.

3. At the conclusion of the conference, the administrative personnel shall determine whether or not a violation of this Policy and Regulation has occurred.

4. If a violation has occurred, appropriate consequences under this Policy and Regulation shall be determined following consideration of all the facts and circumstances of a particular situation, but shall include as a minimum the following:

 a. *First Violation:* The student may not participate in any extracurricular activities for seven (7) school days, and/or, at the discretion of the Administrator, through and including the next scheduled competitive game and/or event.

 b. *Second Violation:* The student may not participate in any extracurricular activities for ninety (90) school days.

 c. *Third Violation:* The student may not participate in any extracurricular activities for one-hundred eighty (180) school days.

*Aggravating factors presented by the student's coach and/or activity advisor (e.g. prior disciplinary incidents) may be considered for purposes of determining whether or not additional consequences are warranted.*

*Any consequences imposed under this Policy and Regulations shall run concurrently with separately imposed disciplinary consequences resulting from the student's conduct (e.g. out-of-school suspensions).*

. . . .

9. In all cases, the District reserves the right to deny a student participation in extracurricular activities, school functions, sports or graduation exercises as disciplinary sanctions, where such measures are designed to maintain the order and integrity of the school environment.

Regulation 6145 became effective at the start of the 2009–2010 school year. Students were notified of the new policy through assemblies, the Student Handbook and the school's website. B.M.M. received her Student Handbook together with a consent form to be signed by her and her parents, acknowledging both receipt of the Handbook and that she would be subject to the disciplinary consequences outlined in Regulation 6145.

After discussing the issue as a family, B.M.M. and her parents decided to object to the regulation and refused to sign the consent form. In a certification submitted in this case to the Commissioner, B.M.M.'s mother T.A.M. indicated that she and her husband believe that "Regulation 6145 infringes upon [their] rights as parents to properly nurture, protect and punish [their] children."

On September 22, 2009, B.M.M. was asked to report to the Indian Hills High School Administration Office to explain why she had not signed the consent form. The matter was thereafter transferred to the high school principal for further action. This was followed by a formal notice to B.M.M.'s parents advising them that their refusal to sign the consent form would "likely" result in a denial of access to the school district's online student information system known as "Genesis."[3] By letter dated September 23, 2009, B.M.M.'s parents informed the high school principal that they had filed a petition with the Commissioner to invalidate Regulation 6145. Petitioners also asked the principal not to subject their children[4] to any disciplinary action or loss of privileges pending the outcome of their legal challenge.

---

[3] T.A.M. described Genesis as "the high school's online parental tool that allows parents real-time access to vital information regarding the student's conduct in the school, including missing homework assignments and grades."

[4] G.D.M. and T.A.M. have a son who is also a student in this school district. He is not a party to this action.

The Commissioner received petitioners' legal challenge to Regulation 6145 pursuant to the jurisdictional authority conferred by *N.J.S.A.* 18A:6–9. The Commissioner thereafter transferred the petition to the Office of Administrative Law (OAL) as a contested case. After considering the parties' positions, the Administrative Law Judge (ALJ) assigned to the case issued a preliminary decision agreeing with petitioners' arguments and recommending that the Commissioner find the regulation unconstitutional. Although the Commissioner adopted the ALJ's recommendation to invalidate Regulation 6145, she based her decision entirely on an analysis of departmental regulations.

II

The Commissioner began her analysis by recognizing that the Board has the authority, indeed the obligation, to establish a code of conduct for students that promotes "positive student development and student behavioral expectations *on school grounds, including on school buses or at school-sponsored functions ....*" *N.J.A.C.* 6A:16–7.1(a) (emphasis added). As an enforcement mechanism, state regulations authorize local boards to prevent a student from participating in extracurricular activities, school functions, sporting events, and graduation exercises as a sanction for violating the code of conduct, "where such measures are designed to maintain the order and integrity of the school environment." *N.J.A.C.* 6A:16–7.1(e).

The Commissioner emphasized, however, that the Board's authority to regulate student conduct outside of school grounds is carefully circumscribed by *N.J.A.C.* 6A:16–7.6. As construed by the Commissioner, *N.J.A.C.* 6A:16–7.6 permits the Board to discipline a student for conduct that occurs outside of school grounds only when:

1. [I]t is reasonably necessary for the student's physical or emotional safety, security and well-being or for reasons relating to the safety, security and well-

being of other students, staff or school grounds pursuant to *N.J.S.A.* 18A:25-2 [5] and *N.J.S.A.* 18A:37-2 [6] [; and]

2. [T]he conduct which is the subject of the proposed consequence materially and substantially interferes with the requirements of appropriate discipline in the operation of the school.

The Commissioner specifically addressed and rejected the Board's argument that suspending or disqualifying a student from participation in extracurricular activities was not a form of discipline because participation in such activities is a privilege, not a right. Although agreeing that participation in extracurricular activities is a privilege, the Commissioner nevertheless characterized "a board's decision to revoke a student's ability to participate" in these school-sponsored activities as "a form of discipline." As a form of discipline, the Commissioner found that "the plain language of Regulation 6145" exceeded the Board's authority by "encompass[ing] too many potential conduct violations that would not meet the elements of *N.J.A.C.* 6A:16–7.6(a)."

---

5 Under *N.J.S.A.* 18A:25-2,

[a] teacher or other person in authority ... shall hold every pupil accountable for disorderly conduct in school and during recess and on the playgrounds of the school and on the way to and from school.

The driver shall be in full charge of the school bus at all times and shall be responsible for order; he shall never exclude a pupil from the bus, but, if unable to manage any pupil, shall report the unmanageable pupil to the principal of the school which he attends.

A pupil may be excluded from the bus for disciplinary reasons by the principal and his parents shall provide for his transportation to and from school during the period of such exclusion.

6 *N.J.S.A.* 18A:37-2 holds a student responsible for an array of misconduct on school grounds, including defacement of school property; continued and willful disobedience of a teacher or other person "having authority over" the student; "habitual use of profanity or of obscene language"; physical assault upon a fellow student; theft or attempted theft of another student's property by the use of force or fear; "[h]arassment, intimidation, or bullying"; damage to school property; unauthorized occupancy of any part of school property, including inciting others to do likewise; incitement of the truancy of other students; and "[k]nowing possession or knowing consumption without legal authority of alcoholic beverages or controlled dangerous substances *on school premises*, or being under the influence of intoxicating liquor or controlled dangerous substances *while on school premises*." (Emphasis added).

The Commissioner also concluded that there was no nexus or link between the regulated conduct and the school district's material interest. Stated differently, the Commissioner found the Board did not satisfy the requirement under *N.J.A.C.* 6A:16–7.6(a)(2), which empowers a school board to revoke a student's ability to participate in extracurricular activities *only if* the board can show how the student's conduct off school grounds "materially and substantially interferes" with the discipline necessary to operate the school.

Although the Commissioner recognized that there may be occasions where a student's conduct off school grounds may necessitate the revocation of that student's eligibility to participate in extracurricular activities or school functions, Regulation 6145, on its face, exceeded the Board's authority to act in this area under *N.J.A.C.* 6A:16–7.6.

### III

The Board argues that the Commissioner misapplied the two-pronged standard of *N.J.A.C.* 6A:16–7.6 to restrict the circumstances under which a school district may suspend a student's participation in extracurricular activities. In this respect, the Board reiterates the distinction it sees between a "privilege" to participate in extracurricular activities, and the "right" to do so. The Board contends that the Commissioner failed to appreciate the legal significance of this dichotomy and, as a consequence, contravened strong legislative policies that favor school boards taking a proactive approach to address student misconduct away from school grounds.

The Board's arguments on this point are joined by the NJASA, NJSBA, and HBE. All three of these entities argue that the main purpose of Regulation 6145 is to deter illegal drug and alcohol use—an area in which parental control has been lacking. They emphasize that the regulation affects only students who choose to participate in extracurricular activities. NJSBA specifically argues that students who volunteer to participate in extracurricular

activities should be held to a higher standard of conduct because they are viewed as leaders of the school community.

In response, petitioners argue that the Commissioner correctly determined that Regulation 6145 exceeds the authority conferred upon a school board by the State Board of Education. According to petitioners, Regulation 6145 violates both *N.J.A.C.* 6A:16–7.6 and *N.J.A.C.* 6A:16–7.1 because it authorizes the school district to discipline a student for conduct that occurs off school grounds, is unrelated to a school activity, and has no impact on the orderly administration of the school.

■ Our analysis of these issues will be guided by well-settled principles of school administrative law. Local school boards function subordinate to, and in conformance with, the regulating guidelines promulgated by the Commissioner and the State Board of Education. *Bd. of Educ. of Plainfield v. Cooperman,* 105 *N.J.* 587, 596, 523 *A.*2d 655 (1987). The State Board of Education is statutorily empowered to promulgate and enforce rules to "effectuate" the laws governing the schools of this State. *L.* 2007, *c.* 222, § 10; *see also N.J.S.A.* 18A:4–15. Rules or regulations adopted by local school boards cannot be inconsistent with the rules adopted by the State Board of Education. *N.J.S.A.* 18A:11–1(c).

The State Board of Education has adopted regulations governing the orderly administration of schools, including regulations pertaining to student conduct. *N.J.A.C.* 6A:16–7.1 to –7.10. Two specific regulations, *N.J.A.C.* 6A:16–7.1 and *N.J.A.C.* 6A:16–7.6, are at issue here.

*N.J.A.C.* 6A:16–7.1, denoted as "Code of student conduct," directs each district board of education to "develop, adopt and implement a code of student conduct which establishes standards, policies and procedures" for student behavioral expectations on school grounds and, as appropriate, for conduct away from school grounds. In 2007, a provision was added to this regulation that specifically allows a district board of education to "deny partic-

ipation in extracurricular activities, school functions, sports or graduation exercises as disciplinary sanctions, where such measures are designed to maintain the order and integrity of the school environment." 39 *N.J.R.* 298 (Feb. 5, 2007).

*N.J.A.C.* 6A:16–7.6, entitled "Conduct away from school grounds," provides:

(a) School authorities have the right to impose a consequence on a student for conduct away from school grounds, including on a school bus or at a school-sponsored function, that is consistent with the district board of education's code of student conduct, pursuant to *N.J.A.C.* 6A:16–7.1.

1. This authority shall be exercised only when it is reasonably necessary for the student's physical or emotional safety, security and well-being or for reasons relating to the safety, security and well-being of other students, staff or school grounds, pursuant to *N.J.S.A.* 18A:25–2 and 18A:37–2.

2. This authority shall be exercised only when the conduct which is the subject of the proposed consequence materially and substantially interferes with the requirements of appropriate discipline in the operation of the school.

3. The consequence pursuant to (a) above shall be handled in accordance with the district board of education approved code of student conduct, pursuant to *N.J.A.C.* 6A:16–7.1, and as appropriate, in accordance with *N.J.A.C.* 6A:16–7.2, 7.3 or 7.5.

A plain reading of *N.J.A.C.* 6A:16–7.6 reveals that the authority granted to a local board to regulate student conduct is conditioned upon the board demonstrating: (1) that the regulation is reasonably necessary to protect the physical and emotional safety of a student; and (2) that the conduct subject to disciplinary consequences *materially and substantially* interferes with the orderly operation of the school. Utilizing this two-pronged approach, the Commissioner invalidated Regulation 6145, finding the Regulation failed to meet both of these requirements.

"[T]he Commissioner of Education has primary jurisdiction to hear and determine all controversies arising under the school laws." *Bower v. Bd. of Educ. of E. Orange,* 149 *N.J.* 416, 420, 694 *A.*2d 543 (1997). The scope of our review of the Commissioner's decision is well-established. Ordinarily, we will uphold a determination of the Commissioner unless it is "arbitrary, capricious, or unreasonable or is not supported by substantial credible evidence in the record as a whole." *Dennery v. Bd. of Educ. of*

*Passaic Cnty. Reg'l High Sch. Dist. #1,* 131 *N.J.* 626, 641, 622 *A.*2d 858 (1993); *accord Dore v. Bd. of Educ. of Bedminster,* 185 *N.J.Super.* 447, 453, 449 *A.*2d 547 (App.Div.1982).

[Courts] look at four factors in assessing whether an agency acted within the scope of its authority:

(1) whether the agency's decision offends the State or Federal Constitution;

(2) whether the agency's action violates express or implied legislative policies;

(3) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant facts.

[*Lourdes Med. Ctr. v. Bd. of Review,* 197 *N.J.* 339, 360, 963 *A.*2d 289 (2009) (quoting *Brady v. Bd. of Review,* 152 *N.J.* 197, 211, 704 *A.*2d 547 (1997)).]

 Because petitioners have raised a facial challenge to the validity of Regulation 6145, the Commissioner based her determination solely on her interpretation and application of departmental regulations. "Where the issue is one of law, the Commissioner's ... decision do[es] not carry a presumption of validity and it is for this court to decide whether those decisions are in accord with the law." *Parsippany–Troy Hills Educ. Ass'n v. Bd. of Educ. of Parsippany–Troy Hills,* 188 *N.J.Super.* 161, 165, 457 *A.*2d 15 (App.Div.), *certif. denied,* 94 *N.J.* 527, 468 *A.*2d 182 (1983). Although we accord great deference to a state agency's interpretation of a regulation within the sphere of its expertise, our duty is to enforce the regulation, especially when it is written in clear, straightforward language. *US Bank, N.A. v. Hough,* 210 *N.J.* 187, 191, 42 *A.*3d 870 (2012).

 Any interpretation of *N.J.A.C.* 6A:16–7.6 must begin with an examination of its plain language. *Cf. State v. Sisler,* 353 *N.J.Super.* 590, 595, 803 *A.*2d 700 (App.Div.2002) ("Statutory interpretation begins with the examination of statutory language to discern legislative intent."), *aff'd,* 177 *N.J.* 199, 827 *A.*2d 274 (2003). "When interpreting a statute or regulation, we endeavor to give meaning to all words and to avoid an interpretation that reduces specific language to mere surplusage." *D'Annunzio v. Prudential Ins. Co. of Am.,* 192 *N.J.* 110, 129, 927 *A.*2d 113 (2007).

The word at issue here is "consequence," which is used in *N.J.A.C.* 6A:16–7.6 to characterize the penalty that school authorities may impose for a violation of the code of conduct that occurs away from school grounds. The Board contends that "consequence" refers only to a disciplinary measure that infringes on a student's right to a thorough and efficient education; petitioners argue that a "consequence" can be anything that adversely affects a student.

" 'When a popular or common word is used in a statute, but is not defined, the word should be given its common meaning.' " *Darel v. Pa. Mfrs. Ass'n Ins. Co.,* 114 *N.J.* 416, 425, 555 *A.*2d 570 (1989) (quoting N. Singer, 2A *Sutherland Statutory Construction* § 47.28 (4th ed.1985)). "In determining the common meaning of words, it is appropriate to look to dictionary definitions." *Macysyn v. Hensler,* 329 *N.J.Super.* 476, 485, 748 *A.*2d 591 (App.Div. 2000).

*Webster's Third New International Dictionary* 482 (Philip Babcock Gove, ed. 1981) defines "consequence" as "something that is produced by a cause or follows from a form of necessary connection or from a set of conditions: a natural or necessary result." *Black's Law Dictionary* 306 (6th ed. 1990) defines "consequence" as "the result following in natural sequence from an event which is adapted to produce, or to aid in producing such result." As these definitions make clear, there is no requirement that a "consequence" be of any particular magnitude; all that is required is that it follow naturally from a cause.

Giving the terms used in *N.J.A.C.* 6A:16–7.6 their "common meaning," a consequence is any result that follows from a student's violation of the code of conduct. There are thus two distinct consequences that result here: (1) the suspension from participating in extracurricular activities; and (2) the mandatory conference between the school administrator and the student and his or her parents. The Board's attempt to mask this outcome by characterizing participation in extracurricular activities as a "privilege" is unavailing. Regulation 6145 freely uses the word "conse-

quences" in describing how violations of the code will be handled,[7] and gives the school district the right to deny participation in extracurricular activities as *"disciplinary sanctions."* (Emphasis added). The Board's clear intent in adopting Regulation 6145 was to use the control it has over students' participation in extracurricular activities as a form of discipline to enforce its code of conduct.

Despite the ordinary meaning of "consequences," the Board argues that the term is ambiguous when read together with *N.J.A.C.* 6A:16–7.1(e), which allows a school district to deny participation in extracurricular activities as disciplinary sanctions "where such measures are designed to maintain the order and integrity of the school environment." The Board contends that *N.J.A.C.* 6A:16–7.1(e), which was adopted a year after *N.J.A.C.* 6A:16–7.6, could have incorporated *N.J.A.C.* 6A:16–7.6's two-pronged test if it had wished to do so.

This argument overlooks that the purpose of *N.J.A.C.* 6A:16–7.1 is to set forth the requirements and limitations of codes of student conduct. In that context, *N.J.A.C.* 6A:16–7.1(e) generally informs local boards that they may impose restrictions on extracurricular activities as disciplinary sanctions. Although *N.J.A.C.* 6A:16–7.1(a) authorizes local boards to establish standards for conduct away from school grounds, the regulation qualifies this grant of authority by limiting it to situations where it is "appropriate" and in accordance with procedures set forth for suspensions and expulsions, or for harassing behavior. Nothing in *N.J.A.C.* 6A:16–7.1 specifically allows a local board to restrict student participation in extracurricular activities based on conduct away from school

---

[7] In the section captioned *"Consequences* for Violations of Conduct Requirements,"* Regulation 6145 includes the following statements: "[i]f a violation has occurred, appropriate *consequences* ... shall be determined ... [a]ggravating factors ... may be considered for purposes of determining whether or not additional *consequences* are warranted[; and] [a]ny *consequences* imposed ... shall run concurrently with separately imposed disciplinary consequences ...." (Emphasis added).

grounds. The grant of that authority is found in *N.J.A.C.* 6A:16–7.6.

"It is a well-established rule of statutory construction that when two statutes conflict, the more specific one controls." *City of Wildwood v. DeMarzo,* 412 *N.J.Super.* 105, 116, 988 *A.*2d 1218 (App.Div.), *certif. granted,* 205 *N.J.* 98, 13 *A.*3d 361 (2010); *certif. dismissed,* 205 *N.J.* 270, 15 *A.*3d 18 (2011). Because *N.J.A.C.* 6A:16–7.6 more specifically addresses a board's authority to control student conduct away from school grounds, its provisions must prevail. The plain language of the regulations amply support the Commissioner's interpretation of *N.J.A.C.* 6A:16–7.6.

The two-pronged test set forth in *N.J.A.C.* 6A:16–7.6 is derived from the trial court's decision in *R. R. v. Board of Education of the Shore Regional High School District,* 109 *N.J.Super.* 337, 263 *A.*2d 180 (Ch.Div.1970).[8] Although the salient facts in *R. R.* are not similar to the public policy arguments underpinning Regulation 6145, the due process considerations informing the court's analysis and ultimate determination in that case are equally applicable here.

In *R. R.,* the local school district suspended a student from school indefinitely based on his alleged involvement in an assault that took place after school hours and away from school grounds. *Id.* at 339, 263 *A.*2d 180. After learning of the incident, the high school superintendent contacted the police, discussed the situation with other school administrators, and ultimately suspended the student without a hearing. *Id.* at 339–40, 263 *A.*2d 180.

The question before the Chancery Division was whether public school officials can deprive a student of the right to attend school because of acts committed off school property that were not ostensibly related to school activities. *Id.* at 343, 263 *A.*2d 180. The court held that the school district's authority to expel or suspend students for conduct away from school grounds could be

---

[8] *See* 37 *N.J.R.* 3297 (Sept. 6, 2005) (confirming that the parameters for *N.J.A.C.* 6A:16–7.6 were derived from *R. R.*).

exercised only "where the activity which is the subject of the proposed suspension or expulsion ... *materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school*," *id.* at 343, 263 *A.*2d 180 (emphasis added), and where a suspension or expulsion "is reasonably necessary for the student's physical or emotional safety and well-being, or for reasons relating to the safety and well-being of other students, teachers or public school property." *Id.* at 344, 263 *A.*2d 180.

Although the court in *R. R.* did not discuss the school district's authority to suspend a student's participation in extracurricular activities, we presume that the scope of the disciplinary sanction would include a suspension from extracurricular activities. Regardless of the scope of the holding in *R. R.*, the State Board of Education was free to adopt the *R. R.* court's two-pronged test to determine the validity of any consequences imposed for non-school-related conduct occurring away from school grounds.

## IV

The Board also argues that the Commissioner's decision to invalidate Regulation 6145 is inconsistent with legislative policies favoring the sharing of information between law enforcement and school officials and encouraging proactive responses by public school districts in combating substance abuse and bullying. The Board emphasizes that the Legislature has enacted legislation specifically aimed at addressing student misconduct occurring away from school grounds. Petitioners argue that state education statutes expressly limit the authority that school districts have over the conduct of students occurring on school grounds or on the way to and from school. They also note that the recently enacted legislation addressing bullying by students pertains only to activities that have a direct impact on the operation of schools.

None of the statutes cited by the Board impeach the soundness of the Commissioner's ruling in this case. None of these statutes grant unlimited power to boards of education to impose disciplin-

ary consequences on students for conduct occurring away from school grounds.

The regulations governing codes of student conduct are intended to give effect to the disciplinary powers granted to local boards of education by *N.J.S.A.* 18A:25–2 and *N.J.S.A.* 18A:37–2. *N.J.S.A.* 18A:25–2 allows a teacher or "other person in authority" to "hold every pupil accountable for disorderly conduct in school and during recess and on the playgrounds of the school and on the way to and from school." *N.J.S.A.* 18A:37–2 provides for the punishment and suspension or expulsion from school of any pupil who is guilty of any of a non-exclusive list of offenses against school staff, fellow students, or school property.

In each of the offenses listed in *N.J.S.A.* 18A:37–2 there is a close nexus between the misconduct and the school. For example, *N.J.S.A.* 18A:37–2(c) refers to "[c]onduct of such character as to constitute a continuing danger to the physical well-being of other pupils." *N.J.S.A.* 18A:37–2(j) cites possession or consumption of alcoholic beverages or controlled dangerous substances, or being under the influence of such substances, on school premises. Nothing in these statutes allows school authorities to punish students for conduct occurring away from school grounds that poses no threat to the school's staff, students or property.

Although the Board correctly notes that *N.J.S.A.* 2A:4A–60(c) allows law enforcement officials to disclose information about an investigation or arrest of a juvenile to the principal of the school where the juvenile is enrolled for use by the principal "for maintaining order, safety or discipline in the school or ... planning programs relevant to the juvenile's educational and social development," nothing in the statute mandates what action the principal must take after receiving this information. Indeed, the statement that the information should be used for maintaining order, safety or discipline in the school, strongly suggests that there be a nexus between the conduct and the safe and orderly operation of the school before action may be taken.

The Board is also correct in pointing out that the Legislature has expressed an intent that school districts develop a comprehensive educational program to combat the illegal use of drugs and alcohol. *N.J.S.A.* 18A:40A–1 to –25. To that end, school districts have been granted broad power to intervene whenever a student shows signs of substance abuse, *N.J.S.A.* 18A:40A–10, and may adopt policies, consistent with the state and federal constitutions, for random drug testing of students who participate in extracurricular activities. *N.J.S.A.* 18A:40A–23. It specifically limits "[a]ny disciplinary action taken against a student who tests positive for drug use or who refuses to consent to testing" to suspension from extracurricular activities or revocation of parking permits.

These statutes do not support the Board's position in favor of Regulation 6145. Nothing in these statutes abrogate the requirement that there be a nexus between the student's conduct and the orderly administration of the school. More importantly, Regulation 6145 does not impose a drug testing requirement nor does it limit the conduct that would trigger administrative action to alcohol or drug-related activity. Under Regulation 6145, a student could be suspended from participating in extracurricular activities as the result of receiving a citation for littering on a municipal sidewalk. Nothing in *N.J.S.A.* 18A:40A–23 can be read to endorse such a result.

Finally, the Board cites the recently enacted Anti–Bullying Bill of Rights Act, *N.J.S.A.* 18A:37–13 to –32, as evidence of the Legislature's intent to allow school districts to address student misconduct that occurs away from school. The Act specifically allows a school district to respond to harassment, intimidation or bullying that occurs off school grounds. *N.J.S.A.* 18A:37–15.3. In defining "harassment, intimidation or bullying," however, the Act differentiates between actions that occur on school property, at a school-sponsored function, or on a school bus, from actions that occur off school grounds. *N.J.S.A.* 18A:37–14.

In cases involving conduct off school grounds, "harassment, intimidation or bullying" is defined as "any gesture, any written, verbal or physical act, or any electronic communication ... that is reasonably perceived as being motivated either by any actual or perceived characteristic ... *that substantially disrupts or interferes with the orderly operation of the school or the rights of other students.* " *Ibid.* (emphasis added). The Act clearly reaffirms the requirement of the nexus articulated by the court in *R. R.*

## V

■ We have reviewed the remaining arguments raised by the Board and amici in support of reversing the Commissioner's decision to invalidate Regulation 6145, and reject them without further comment because they lack sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(1)(E). We also decline to consider the arguments raised by petitioners in their cross-appeal. In their petition, petitioners requested that the Commissioner enjoin the Board from enforcing Regulation 6145 and declare it null and void. The Commissioner granted petitioners that exact relief by finding Regulation 6145 to be unlawful and directing the Board to revise its policy. "Only a party aggrieved by a judgment may appeal from it." *Velazquez v. Jiminez,* 336 *N.J.Super.* 10, 47, 763 *A.*2d 753 (App.Div.2000), *aff'd,* 172 *N.J.* 240, 798 *A.*2d 51 (2002). Petitioners are not entitled to any specific legal analysis, only to the relief requested. They have prevailed in their petition.

Affirmed on direct appeal. Cross-appeal is dismissed.