**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3847-16T3

IN THE MATTER OF THE SUSPENSION
OF THE CERTIFICATE(S) OF CHAE HYUK IM,
SCHOOL DISTRICT OF THE TOWNSHIP OF
WAYNE, PASSAIC COUNTY.

_____

Argued July 2, 2018 — Decided July 20, 2018

Before Judges Carroll and Rose.

On appeal from the Commissioner of Education,
Docket No. 357-12/14.

Louis P. Bucceri argued the cause for
appellant Chae Hyuk Im (Bucceri & Pincus,
attorneys; Louis P. Bucceri, of counsel and
on the briefs).

John G. Geppert, Jr., argued the cause for
respondent Wayne Township Board of Education
(Scarinci Hollenbeck, LLC, attorneys; John G.
Geppert, Jr., of counsel; Shana T. Don and
Craig A. Long, on the brief).

Gurbir S. Grewal, Attorney General, attorney
for respondent Commissioner of Education (Joan
M. Scatton, Deputy Attorney General, on the
statement in lieu of brief).

PER CURIAM

Appellant Chae Hyuk Im appeals the final administrative decision of the Commissioner of Education (Commissioner) suspending his teaching certificates for one year. The suspension was based on the Commissioner's determination that Im was guilty of unprofessional conduct pursuant to N.J.S.A. 18A:28-8 for failing to provide the requisite sixty-day notice before resigning his teaching position with the Wayne Township Board of Education (BOE). We affirm.

Im began his employment with the BOE as a chemistry teacher in September 2005, and became tenured in September 2008. In 2011, while still employed by the BOE, Im applied for a position with the Federal Bureau of Investigation (FBI). The application remained inactive for several years due to a federal hiring freeze.

On May 15, 2014, Im received a letter from the BOE listing his salary for the 2014-2015 school year. In that letter, the BOE also advised Im that if he should have reason to believe he would be unable to serve for that school year he should inform the Wayne school district (District) immediately.

Among other things, the FBI application process required Im to undergo a background investigation and a physical fitness test (PFT). In May 2014, FBI agents contacted the BOE as part of Im's background check. In July 2014, Im was told he was listed for a September 2014 training start date. In anticipation of entering

the FBI Academy in September, Im wrote a letter to the BOE on July 23, 2014, requesting a one-year leave of absence. The BOE agreed to grant the leave, if it was needed.

On August 7, 2014, Im failed his PFT, and he was removed from the September training start date. Consequently, Im advised the BOE's administration that he would be starting the 2014—2015 school year as usual.

Im decided not to retake the PFT in September 2014, because he did not have time to sufficiently train for it. Instead, he opted to take the PFT again on October 9, 2014, and was told he passed it. Im again requested a leave of absence, but the BOE denied the request at its October 16, 2014 meeting. The next day, Im resigned from his teaching position to accept employment with the FBI, where he presently works as a Special Agent.

At the time of his resignation, Im was teaching four sections of high school chemistry, and he was unaware which teachers would take over his classes. He arranged to leave binders of documents he had prepared for use by whoever was assigned to replace him. Four teachers who were currently teaching in the District's science department and a per diem substitute were paid to cover Im's classes until the District hired a replacement teacher in January 2015. The parties stipulated that the costs expended by the BOE to replace Im during the sixty-day notice period were less than

the cost of the salary and benefits the BOE would have paid Im had he worked during that same period.

On December 1, 2014, at the request of the BOE, the Commissioner entered an order directing Im to show cause why his teaching certificate should not be suspended for unprofessional conduct pursuant to N.J.S.A. 18A:28-8, which provides:

> Any teaching staff member, under tenure of service, desiring to relinquish his position shall give the employing board of education at least [sixty] days written notice of his intention, unless the board shall approve of a release on shorter notice and if he fails to give such notice he shall be deemed guilty of unprofessional conduct and the [C]ommissioner may suspend his certificate for not more than one year.

Im filed an answer, and the Commissioner subsequently transferred the matter to the Office of Administrative Law as a contested case.

On August 13, 2015, the BOE filed a motion for summary decision. On May 18, 2016, an administrative law judge (ALJ) found there were no material disputed facts and the matter was "ripe for partial summary decision as to the issue of 'unprofessional conduct.'" The ALJ noted the central purpose of N.J.S.A. 18A:28-8 is "to provide notice to the school so that a suitable replacement can be hired without adversely impacting students." Looking to the language of the statute, the ALJ found

it "quite clear" that an employee who fails to provide the requisite notice "shall be deemed guilty of unprofessional conduct." The ALJ reserved the issue of an appropriate sanction and consideration of any appropriate mitigating factors for a future hearing.

On June 30, 2016, the Commissioner adopted the ALJ's partial initial decision. The Commissioner agreed with the ALJ that the language of N.J.S.A. 18A:28-8 was mandatory. Specifically, an employee who fails to give a board of education sixty days' notice of his or her intention to resign "shall" be deemed guilty of unprofessional conduct.

The Commissioner rejected Im's argument that the ALJ erroneously prevented him from presenting evidence at a hearing regarding the impact of a finding of "unprofessional conduct" on his FBI employment. The Commissioner found this argument "misguided because there is no genuine issue of fact as to [Im's] failure to provide the [BOE] with the requisite notice; the material facts in dispute only pertain to the mitigating circumstances that could impact the potential suspension of his [teaching] certificate." The Commissioner concluded:

> Notwithstanding the finding of unprofessional conduct, [Im] will be afforded a hearing to determine whether a certificate suspension is appropriate in this case. To that end, [Im] will be given a full opportunity to present

> evidence of mitigation, including the fact
> that he left his teaching post to take a job
> with the FBI.

A hearing on the appropriate penalty followed. Two witnesses testified for the BOE, including the Wayne superintendent of schools and the high school principal. Im testified and also presented the testimony of a chemistry teacher who served as one of his replacements after he resigned.

The ALJ recounted the testimony and evidence presented at the hearing and made detailed findings of fact and conclusions of law in her comprehensive twenty-seven-page initial decision. At Im's request, the ALJ agreed to consider the "Giglio Policy," an FBI policy "Regarding the Disclosure to Prosecutors of Potential Impeachment Information Concerning Law Enforcement Agency Witnesses." Ultimately, however, the ALJ accorded the policy little weight because Im "failed to introduce any additional evidence to buttress his assertion that the imposition of a one-year penalty will have any different effect on his ability to testify or perform his [FBI] job [duties] than a shorter suspension period."

Additionally, the ALJ found:

> It was clear from the testimony of the District's witnesses that, while the disruption to Mr. Im's students was not catastrophic, there were definitely consequences to his leaving early. While

6

permanent teachers took on all but one of Mr. Im's classes, because of scheduling difficulty for labs, each student had three to four teachers from September until January. While it is true, as [Im] argued, that there would have been a disruption no matter when Im left, the District would have had more time to try to find a replacement for Im and some of the disruption could have been alleviated had he waited the sixty days. In addition, at least one parent complained that the quality of the teaching of the substitute teacher was not up to the standards of the permanent teachers, and the principal had to talk to the substitute about the quality of his teaching. . . . The principal of the school, . . . who was sympathetic toward Im, acknowledged that Im did not find a replacement for himself, nor did he recall Im offering to do so. A replacement was found because a newly hired teacher had a friend who decided to apply for the opening. [The principal] also testified that at the time Im left, he was not aware that [Im] had left his materials for the replacement teachers. Nor did [Im] talk to the principal about the students and any special needs.

[(Footnote omitted).]

"Weighing all of the mitigating factors," the ALJ recommended a six-month suspension of Im's teaching certificates.

The Commissioner rejected the ALJ's recommendation in her final agency decision issued on April 6, 2017. The Commissioner instead determined that Im's teaching certificates should be suspended for one year. Citing numerous administrative decisions that addressed the issue, the Commissioner explained:

The decision to suspend a teaching certificate pursuant to N.J.S.A. 18A:28-8 is discretionary and the Commissioner has historically evaluated all attendant circumstances on a case-by-case basis. As a general rule, however, given the underlying purpose of the statute,[1] teachers who have been found guilty of unprofessional conduct for failing to provide the requisite [sixty]-day notice receive a one-year certificate suspension. The one year suspension is routinely issued where the facts demonstrate that individuals have violated the [sixty]-day notice requirement for strictly personal reasons, putting their own self-interest above the interests of students and their professional obligation to provide adequate notice to the board.

Despite the general rule of a one-year suspension, there are rare instances where the Commissioner has found justification for a lesser penalty in cases where compelling mitigating circumstances exist for the lack of the requisite notice. A common theme in many of these cases was the existence of a suitable alternative who was available to replace the resigning teacher, thereby minimizing the impact on the students. . . .

Unlike these cases - which have justified an exception to the customary one-year suspension - the facts in this matter are neither exceptional nor do they warrant the exercise of the Commissioner's discretion. Rather, in the instant matter, [Im's] desire for the early release from his professional

---

[1] The Commissioner recognized, as the ALJ did previously, that "[t]he obvious purpose of N.J.S.A. 18A:26-10 [and N.J.S.A. 18A:28-8] is to provide notice to the school so that a suitable replacement can be hired without adversely impacting students." (citing Penns Grove-Carneys Point Bd. of Educ. v. Regina Leinen, 94 N.J.A.R.2d 405, 407 (EDU)).

obligations was based solely on personal motives and his own convenience.

. . . .

The Commissioner recognizes [Im's] goal of becoming an FBI agent and his concern that if he did not begin training in October 2014, he may have missed out on his opportunity. However, there is no question that [Im] violated the statute, and his departure resulted in a disruption to his classes - which is the very consequence that the statute seeks to minimize when a teacher resigns from the school district. Nor should it be overlooked that the [BOE] originally granted [Im] a one-year leave of absence when he made the request prior to the start of the 2014-2015 school year; it was only because of [Im's] own actions, i.e. failing the August 2014 [PFT] and deciding not to take the test again in September 2014, that [Im] declined the proffered leave of absence and began teaching at the beginning of the 2014—2015 school year. Further, the circumstances here are not analogous to several cases where a lesser penalty was imposed, because in this case there was not a replacement teacher available to ensure a smooth transition and to minimize the impact on students. Additionally, resigning without providing the requisite notice to seek an alternate career is not akin to resigning without the requisite notice because of a debilitating health issue. Despite the fact that [Im] provided teaching materials for his successor's use when he resigned, his untimely resignation had significant consequences: it left four high school chemistry classes without a permanent teacher until January 2015; the [BOE] had to scramble to find a suitable replacement on short notice; and the quick departure resulted in an increased workload for co-workers, who had to cover [Im's] classes between October 2014 and January 2015.

9

[Im] maintains that he should not receive a license suspension because it will significantly impact his ability to function as an FBI agent and that impact far exceeds anything allegedly suffered by the District. [Im] stresses that the damage to his career as an FBI agent that would occur if his certificates are suspended is illustrated by the Department of Justice's stated policy of disclosure to prosecutors of potential impeachment information. [Im] maintains that the Giglio Policy requires the disclosure of all instances where an agent's reputation has been impugned; thus, any reputational defect - not just those related to veracity - must be disclosed and may lead to a preclusion of the agent's ability to function as a witness. The Commissioner fully accepts [Im's] argument that he will have to disclose to the prosecutor in the case where he is a potential witness that he was found to be guilty of unprofessional conduct pursuant to N.J.S.A. 18A:28-8. The fact that [Im] will likely have to disclose that his certificates were suspended because of his unprofessional conduct is not a compelling mitigating circumstance, especially coupled with the fact that his unprofessional conduct was self-serving and adversely impacted his students. Therefore, the Commissioner is not compelled to exercise her discretion by ordering an exception to the customary one-year suspension.

[(Citations and footnotes omitted).]

On appeal, Im challenges the Commissioner's decisions finding him guilty of unprofessional conduct and suspending his teaching certificates for one year. He argues the decisions are incorrect as a matter of law, and they deprived him of his constitutional right to a hearing prior to finding him guilty of unprofessional

10

conduct. Im further contends the one-year penalty imposed by the Commissioner is arbitrary and capricious and is not based on substantial evidence in the record. We disagree.

"[T]he Commissioner of Education has primary jurisdiction to hear and determine all controversies arising under the school laws." Bower v. Bd. of Educ. of E. Orange, 149 N.J. 416, 420 (1997). As a result, her "statutory interpretation is entitled to considerable weight, where not inconsistent with the statute and in harmony with the statutory purpose." Kletzkin v. Bd. of Educ. of Spotswood, 136 N.J. 275, 278 (1994). We will ordinarily uphold the Commissioner's determination unless it is "arbitrary, capricious, or unreasonable or is not supported by substantial credible evidence in the record as a whole." G.D.M. v. Bd. of Educ. of the Ramapo Indian Hills Reg'l High Sch. Dist., 427 N.J. Super. 246, 259 (App. Div. 2012) (quoting Dennery v. Bd. of Educ. of Passaic Cty. Reg'l High Sch. Dist. # 1, 131 N.J. 626, 641 (1993)).

The deferential standard to which we adhere "applies to the review of disciplinary sanctions as well." In re Herrmann, 192 N.J. 19, 28 (2007) (citing Knoble v. Waterfront Comm'n of N.Y. Harbor, 67 N.J. 427, 431-32 (1975)). The test for reviewing an administrative sanction is "whether such punishment is 'so disproportionate to the offense, in light of all the circumstances,

as to be shocking to one's sense of fairness.'" In re Polk, 90 N.J. 550, 578 (1982) (citation omitted).

We have considered Im's arguments in light of the applicable standard of review and the facts developed in the record. We affirm substantially for the reasons expressed by the Commissioner in her June 30, 2016, and April 6, 2017 administrative determinations, which are supported by sufficient credible evidence. R. 2:11-3(e)(1)(D).

Nor does the one-year suspension of Im's teaching certificates shock our sense of fairness. The result we reach is not intended in any way to be critical of Im's laudatory goal of serving his country as an FBI agent. Nonetheless, we recognize, as did the ALJ, that "[w]hile being an FBI agent may be more important to [Im] than being a teacher, that is a personal choice" and "it is a dangerous path to start deciding what jobs are more important and therefore worthy of more consideration."

To the extent that we have not specifically addressed Im's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written decision. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3847-16T3