# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1432-23

D.M.,[1] on behalf of minor
child, C.M.,

     Petitioner-Respondent,

v.

BOARD OF EDUCATION OF
THE TOWNSHIP OF HAMILTON,
MERCER COUNTY,

     Respondent-Appellant.

_____

Argued March 18, 2025 – Decided April 9, 2025

Before Judges Firko and Augostini.

On appeal from the New Jersey Commissioner of Education, Docket No. 73-4/22.

Patrick F. Carrigg argued the cause for appellant (Lenox Law Firm, attorneys; Patrick F. Carrigg and Costadinos J. Georgiou, on the briefs).

Amna T. Toor, Deputy Attorney General, argued the cause for respondent Commissioner of Education

---

[1] We use initials to protect the identities of the parties.

(Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Amna T. Toor, on the brief).

PER CURIAM

County (Board) appeals from the November 30, 2023 final agency decision of respondent, the New Jersey Commissioner of Education (Commissioner),[2] affirming the Administrative Law Judge's (ALJ) initial decision vacating the Board's determination that C.M. violated the District Code of Conduct for eating a Rice Krispies treat edible[3] on school premises and distributing the rest to other students. The Commissioner determined that the Board's determination was arbitrary, capricious, and unreasonable. Based on our review of the record and applicable principles, we affirm.

---

[2] At the time of this decision, the Commissioner was Dr. Angelica Allen-McMillan, Ed.D.

[3] An edible is defined as "any of various food items containing [tetrahydrocannabinol (THC)]" or "something that is suitable or safe to eat[;] a food item." Merriam-Webster, https://www.merriam-webster.com/dictionary/edible (last visited Apr. 2, 2025).

I.

In January 2022, C.M. was an eighth-grade student attending Emily C. Reynolds Memorial Middle School (Reynolds Middle School). On January 18, 2022, C.M., along with another student L.P., purchased a Rice Krispies treat[4] from an unidentified man behind a Dollar Tree Store at the Hamilton Square Shopping Center. The man was never apprehended. The following day, C.M. and L.P. went to school and reported to the gym bleachers—where eighth graders sit for their morning program. C.M. ate a piece of the Rice Krispies treat while sitting in the bleachers and reported that she felt "weird" after eating it. C.M. claimed that L.P. forced her to eat the treat and distribute it to other students. However, L.P. claimed that it was C.M. who brought the treat to school and ate it willingly.

Video footage of the students showed C.M. and L.P. sitting side by side at lunch without any signs of discomfort or coercion between them. The video footage also revealed that there was something on C.M.'s lap, but it was difficult to identify. C.M. consumed more of the treat at lunch. After lunch, C.M. became ill and vomited. C.M. went to the nurse's office and texted her father,

---

[4] The treat is also referred to as an "edible" in the record. We use "treat" and "edible" interchangeably in our opinion.

D.M, to pick her up from school, and was absent from school the next day. Other students told L.P. that C.M. blamed L.P. for putting something in the Rice Krispies treat that made her sick. C.M. texted L.P. that she got her in trouble because something was "laced" in the treat.

On January 21, 2022, L.P. went to C.M.'s locker and started a fight with her because of the rumors that C.M. spread about her regarding the treat. C.M. was "submissive." L.P. punched C.M. in the head and pulled her hair. The fight ended when school administrators intervened and broke it up. Administrators spoke with students, including C.M. and L.P., learned about C.M.'s and L.P.'s purchase of the treat, and called their parents. L.P. was suspended for five days for fighting, while C.M. was suspended indefinitely pending a Board hearing for possession and distribution of an illegal substance on January 19, 2022.

On February 2, 2022, Reynolds Middle School Principal Patricia Landolfi-Collins sent correspondence to D.M., notifying him that C.M. was suspended indefinitely and charged with "possession and distribution of an illegal substance," in violation of the District Code of Conduct.[5] The school

_____

[5] Section C of the Hamilton Township School District Policy and Regulation (District Policy) 5600 (C)(10), states that "[c]onduct which shall constitute good cause for suspension . . . shall include, but not be limited to, any of the following: . . . [k]nowing possession or knowing consumption . . . of . . . controlled

administrators were unable to perform laboratory testing on the treat because it had been consumed by C.M., and the rest of it had been distributed. C.M. could not remember which students she gave pieces of the treat to. In a letter to the Board, Landolfi-Collins stated that C.M.'s suspension stemmed from her "admission" that she consumed a "Rice Krispie[s] [t]reat edible with THC" and distributed it to other students.

On February 15, 2022, the Board conducted C.M.'s disciplinary hearing. Landolfi-Collins and Vice Principal Christine Hart testified at the Board hearing. Landolfi-Collins did not mention THC during her testimony but stated she knew there was an illegal substance in the treat based on her interview with C.M., who advised her that she and L.P. "bought an edible" and that L.P. probably "laced whatever she gave her." Hart testified that C.M. did not know what was in the treat.

C.M.'s counsel submitted evidence of a negative drug test administered by C.M.'s pediatrician conducted four days after the incident. C.M. underwent the drug test voluntarily. The Board found that C.M. violated the District Code of

---

substances on school premises, or being under the influence of . . . controlled substances while on school premises . . . .

A-1432-23

Conduct by bringing the edible on school grounds. On March 1, 2022, the Board issued a written decision setting forth its findings and legal conclusions.

The Board found that C.M. "believed she was in possession of what she thought to be a dangerous substance" and distributed it to other students. The Board noted C.M.'s "admissions" to Landolfi-Collins "were unrebutted and support the finding." The Board determined that the "circumstances" as to how C.M. acquired the edible "are highly concerning" because she purchased it "from an unidentified man behind a store" rather than inside of a store if C.M. "believed this to be a regular [R]ice [K]rispies treat."

The Board explained that C.M. "admitted to distributing the edible to other students" and "to feeling sick" after ingesting it, "causing her to vomit." The Board noted that no lab test confirmed whether the edible "was actually laced with a dangerous substance," but that does not "excuse" C.M.'s conduct on school grounds. The Board highlighted the "importance of deterring other students from similar conduct" as well as the "need to punish" C.M. for conduct that could have had a "more dire result for her and other students."

The Board noted C.M.'s attendance and good grades and allowed her to return to school with a suspension noted in her discipline record. C.M. was

assessed with the maximum discipline permitted by the District Code of Conduct for possession and distribution.

D.M., on behalf of C.M., filed an appeal to the New Jersey State Department of Education, Bureau of Controversies and Disputes, which transferred the case to the Office of Administrative Law (OAL). The parties cross-moved for summary decision. On October 24, 2023, the ALJ found the Board was arbitrary, capricious, and unreasonable in its findings and vacated its determination that C.M. violated the District Code of Conduct. The ALJ determined:

> [C.M.] has demonstrated that the Board acted in disregard of the circumstances before it, and that its decision was not supported by credible evidence. While it is reasonable to infer that C.M. did not believe she purchased an ordinary Rice Krispies treat from the man behind the Dollar Tree Store, [the Board] concedes that neither the school nor the Board was able to determine what dangerous substance, if any, the Rice Krispies treat contained. [The Board] likewise acknowledges that C.M. did not know what was in the Rice Krispies treat. Contrary to [the Board]'s assertion that [C.M.]'s mere belief that she possessed contraband is sufficient to justify the suspension, the District Code of Conduct specifically penalizes "[k]nowing possession or knowing consumption without legal authority of . . . a controlled dangerous substance [(CDS)] on school premises" and "being under the influence of . . . [CDS] while on school premises." There was no knowledge here or proof that a [CDS] was involved, and the Board offered scant details about the

alleged distribution. The absence of substantial, credible evidence in this case renders the Board's decision unreasonable. Accordingly, I CONCLUDE that [the Board] acted in a manner that is arbitrary, capricious, and unreasonable and the charge of possession and distribution of T[HC] is unfounded.

The Board filed a written exception with the Commissioner pursuant to N.J.A.C. 1:1-18.4(a).

On November 30, 2023, the Commissioner adopted the ALJ's initial decision. The Commissioner found the Board's decision was arbitrary, capricious, and unreasonable and "lacked a rational basis." The Commissioner highlighted that the record "does not contain any credible evidence to establish that the treat contained THC or any other [CDS]." In addition, the Commissioner found the record failed to establish C.M. "knowingly possessed or knowingly consumed a [CDS] on school premises in violation of N.J.S.A. 18A:37-2(j), and District Policy 5600(C)(10).

The Commissioner noted that the principal's testimony elicited at the Board meeting was based on an assumption that the treat contained THC because C.M. referred to it as an "edible" purchased from an unknown person. However, the Commissioner emphasized the record showed C.M. maintained she did not know what was contained in the treat, neither she nor anyone else ever stated that the treat contained THC, and the treat was never evaluated to determine

8

whether it contained THC or another substance. The Commissioner noted the dictionary definition of "edible" fails to support the conclusion that the treat at issue contained THC or a CDS, and C.M.'s "belief" that L.P. might have put something in the treat does not support that conclusion either.

## II.

On appeal, the Board contends the Commissioner's final decision should be overturned as arbitrary, capricious, and unreasonable. The Board further argues the Commissioner incorrectly construed the Board's policy and charge by arbitrarily and inappropriately adding a scienter requirement and overlooked undisputed evidence in the record. It also contends the Commissioner's final decision violates public policy by encouraging the consumption of edibles and other drugs on school grounds before a Board can test the substance. The Commissioner seeks affirmance.[6]

Our role in reviewing the final decision of an administrative agency is limited. In re Herrmann, 192 N.J. 19, 27 (2007). When a contested case is submitted to the OAL for a hearing, the agency head must review the record submitted by the ALJ and give attentive consideration to the ALJ's initial

---

[6] D.M. did not file a brief but relies on the brief filed on behalf of the Commissioner.

decision. N.J. Dep't of Pub. Advoc. v. N.J. Bd. of Pub. Utils., 189 N.J. Super. 491, 506 (App. Div. 1983). The agency head nevertheless remains the primary factfinder and maintains the ultimate authority to reject or modify findings of fact, conclusions of law, or interpretations of agency policy. Id. at 507 (citing N.J.S.A. 52:14B-10(c)).

Established principles of law direct us not to upset an agency determination absent a showing that it was arbitrary, capricious, or unreasonable; that it lacked fair support in the evidence; or that it violated legislative policies. Lavezzi v. State, 219 N.J. 163, 171 (2014); Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963). The "final determination of an administrative agency . . . is entitled to substantial deference." In re Eastwick Coll. LPN-RN Bridge Program, 225 N.J. 533, 541 (2016). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)).

To determine whether an agency action is arbitrary, capricious, or unreasonable, a reviewing court must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;

(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Ibid. (quoting Carter, 191 N.J. at 482-83).]

"The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006). We review summary decision motions under N.J.A.C. 1:1-12.5 "substantially the same as that governing a motion under Rule 4:46-2 for summary judgment in civil litigation." L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 203 (2015).

"[T]he Commissioner . . . has primary jurisdiction to hear and determine all controversies arising under the school laws." Azzaro v. Bd. of Educ. of City of Trenton, 477 N.J. Super. 427, 435 (App. Div. 2023) citing Bower v. Bd. of Educ. of E. Orange, 149 N.J. 416, 420 (1997) (citing N.J.S.A. 18A:6-9). As a result, their "statutory interpretation is entitled to considerable weight, where not inconsistent with the statute and in harmony with the statutory purpose." Kletzkin v. Bd. of Educ. of Spotswood, 261 N.J. Super. 549, 553 (App. Div. 1993). We will ordinarily uphold the Commissioner's determination "unless it

is 'arbitrary, capricious, or unreasonable or is not supported by substantial credible evidence in the record as a whole.'" G.D.M. v. Bd. of Educ. of the Ramapo Indian Hills Reg'l High Sch. Dist., 427 N.J. Super. 246, 259-60 (App. Div. 2012) (quoting Dennery v. Bd. of Educ. of Passaic Cnty. Reg'l High Sch. Dist. #1, 131 N.J. 626, 641 (1993)).

A.

We first address the Board's argument that the Commissioner erred by not applying the arbitrary, capricious, or unreasonable standard to the "plain language" of the Board's policy by adding the word "knowing" to the charge of possession and distribution of a controlled substance. By adding the word "knowing" to the Board's policy, the Board maintains the Commissioner created a "dangerous precedent" by "demanding" that the Board prove C.M.'s knowledge of the exact contents of the substance she claimed made her ill. The Board contends this misinterpretation "complicated the matter" and was contrary to substantial credible evidence in the record warranting reversal. The Board asserts that interjecting the scienter requirement restricts its ability to prevent the consumption and distribution of edibles and drugs on school premises.

The Board's arguments are unavailing. The Commissioner agreed with the ALJ's assessment there was no credible evidence presented that established

12                                                                                        A-1432-23

the treat contained THC or any other CDS in contravention of District Policy 5600. Moreover, the Commissioner found that C.M. maintained that she did not know what the treat contained; neither she nor anyone else ever represented the treat contained THC; and saliently, the treat was never tested to ascertain what, if anything, it contained. Importantly, the Commissioner determined C.M.'s belief, without more, that L.P. might have laced the treat does not lead to the conclusion that the treat actually contained THC or a CDS. The record supports that determination.

B.

The Board next argues that the Commissioner overlooked the "undisputed evidence" in the record. According to the Board, the circumstances under which C.M. and L.P. purchased the edible from "the nefarious man" behind the Dollar Tree Store, consumed at school, and distributed by C.M. to other students was not considered by the Commissioner. The Board contends C.M. and L.P. "could have simply entered the Dollar Tree Store" to make a purchase, indicating the purchase of the treat was "illegal."

The Board asserts the treat caused "foggy memory" because C.M. claimed she had difficulty remembering which students she gave the treat to, and her ingestion of the treat made her feel "weird" and later ill. The Board claims it is

"undisputed" that C.M. possessed and distributed an illegal substance. We disagree.

The record is devoid of evidence or testimony that the treat contained a dangerous substance. Notwithstanding C.M. stating it was an "edible," the Commissioner determined that C.M. maintained she did not know what substance—if any—was in the treat. Moreover, the testimony presented at the Board disciplinary hearing confirmed that C.M. did not know what was in the treat and no independent testing or evidence was presented to establish what the purported "illegal substance" was. Specifically, we note THC was not mentioned at the hearing by the witnesses who testified. The Commissioner found that C.M.'s belief that L.P. may have put something in the treat failed to support a finding that the treat contained THC or a dangerous substance.

Given these findings, we are convinced the evidence in the record amply supports the Commissioner's decision. We find no merit in the Board's argument. We conclude the Commissioner's decision is not arbitrary, capricious, or unreasonable. See Hermann, 192 N.J. at 27-28.

C.

Finally, the Board argues the Commissioner's final agency decision is arbitrary, capricious, and unreasonable and violates public policy by

14

encouraging the consumption of edibles and other illicit drugs on school grounds. In the Board's view, the Commissioner's decision sets a dangerous precedent by advising school boards to reject student confessions and require drug testing even when the substance has already been consumed. The Board contends the Commissioner's decision essentially promotes the consumption of edibles on school grounds and imposes an unrealistic burden on school boards by requiring proof that a student "knowingly" ingested or distributed an edible containing THC, and fosters an environment where students will exhibit the same behavior as C.M.

The Board's arguments are belied by the record. The Commissioner rejected

> the Board's assertion that the [i]nitial [d]ecision "creates a dangerous precedent" and ignores the Board's obligation to maintain the safe and orderly operation of the schools and protect students. While the Commissioner does not condone [C.M.]'s actions, the ALJ correctly found and concluded under the applicable legal standard that the Board's disciplinary charges against C.M. were unsupported by credible evidence. The holding in this case is limited to the unique facts described herein and in no way ignores a Board's obligation to maintain the safe and orderly operation of schools and to keep students from harm, nor does it prevent [school] [b]oards from disciplining students in accordance with applicable law and regulations.

A-1432-23

Contrary to the Board's assertions, the record does not reflect the Commissioner inferred facts or drew conclusions that are contrary to public policy. In rendering her decision, the Commissioner emphasized it was limited to C.M.'s case and the unique facts presented. Accordingly, we conclude the Commissioner's decision does not violate public policy.

Because the Commissioner's final decision is supported by sufficient credible evidence in the record, we discern no basis to disturb it. To the extent we have not addressed any of the Board's remaining arguments, we find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1432-23