**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3079-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

PAUL DOUGHERTY,

     Defendant-Appellant.

_____

Submitted February 5, 2020 – Decided January 15, 2021

Before Judges Fuentes, Haas and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Accusation No. 18-10-2467.

Edward Crisonino, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Brian Uzdavinis, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Defendant Paul Dougherty appeals from the order of the Criminal Part which upheld the Attorney General's objection to his admission into the Pretrial Intervention (PTI) program. We affirm.

At all times relevant to this case, defendant was an attorney and an elected Commissioner of Haddon Township.[1] He served in this elected position from May 1, 2013 to July 31, 2018. On October 17, 2018, defendant waived his right to have the charges against him presented to a Grand Jury and pled guilty, pursuant to a negotiated agreement with the State, to an accusation charging him with third degree conspiracy to confer an unlawful benefit to a public servant, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:27-11(b).

Defendant admitted that during the time he served as an elected Commissioner of the Township of Haddon, he received $7,106 from a law firm as a fee[2] for referring an employee of the Township in litigation against the

[1] Haddon Township is a municipality organized under the Walsh Act, N.J.S.A. 40:70-1 to N.J.S.A. 40:76-27. Under this form of government, a municipality is governed by a board of commissioners who have "all . . . executive, administrative, judicial and legislative powers[.]" N.J.S.A. 40:72-2. See City of Wildwood v. DeMarzo, 412 N.J. Super. 105, 111-12 (App. Div. 2010).

[2] See Rule 1:39-6(d).

Township, in violation of N.J.S.A. 2C:27-11(b).[3] Although the appellate record does not contain the transcript of the plea hearing, the Judgment of Conviction reflects defendant pled guilty to this offense on July 30, 2018.

On October 31, 2018, defendant submitted an application to the vicinage's Criminal Division Manager for admission into PTI. In a letter addressed to the trial judge dated November 1, 2018, the Deputy Attorney General (DAG) who represented the State objected to defendant's admission into PTI based on: (1) the serious nature of the offense; and (2) the consequential erosion of the public's faith in the impartiality of our criminal justice system. The State also relied on the presumption against admission into PTI codified in Rule 3:28-1(e)(1) for offenses in which "a public officer or employee . . . is charged with a crime that involved or touched the public office or employment." To rebut this presumption of ineligibility, the applicant must present evidence of extraordinary and compelling circumstances. R. 3:28-1(e)(3). The State argued

---

[3] On May 8, 2020, the Supreme Court formally reprimanded defendant for violation of RPC 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer); and RPC 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation). In re Dougherty, 241 N.J. 541 (2020).

defendant had not presented any grounds to satisfy this high standard for admission into PTI.

The State concluded its objection to defendant's admission into PTI by noting that:

> the defense had been advised, we were alternatively prepared to present an indictment to a State Grand Jury charging second-degree Official Misconduct, N.J.S.A. 2C:30-2, which carries a mandatory minimum five-year prison term. Moreover, . . . defendant's plea was the result of a negotiated agreement with the State that involved . . . defendant's acknowledgment of guilt and entry into a consent order with a lifetime ban on public office/employment, in exchange for which the State would agree to recommend a non-custodial term of probation. This agreement was further acknowledged on the record by the defense that same day.

The State's appendix contains a two-page document which appears to be a copy of defendant's PTI application. The first page is labeled: "Application for PTI," and contains three printed vertical columns that run the length of the page. Each column contains a heading that describes the process and eligibility requirements for admission into PTI. The applicant is apprised that he or she will be interviewed by "a staff member of the Criminal Division of the Superior Court." This staff member will prepare a written report "detailing the decision for admittance or rejection."

4

The appellate record does not include a copy of the Criminal Division staff member's report containing his or her assessment of defendant's suitability for admission into PTI. See R. 3:28-6(b).[4] This court has made clear that the PTI program is designed to require the participation of both the Criminal Division Manager and the prosecutor. State v. Rizzitello, 447 N.J. Super. 301, 310-11 (App. Div. 2016). Although Rizzitello was decided before the Supreme Court adopted Rule 3:28-1, the underlying principle requiring input and participation from these two branches of government remain a vital and mandatory part of this diversionary program.

We thus included the following admonition in Rizzitello: "We expect the trial court to enforce this aspect of the PTI Program's application process to ensure the reviewing judge has a complete record before deciding a defendant's challenge to the denial of his or her application." Id. at 311. Here, the trial court failed to enforce this requirement. However, the record contains sufficient facts to enable us to reach a final conclusion.

On January 14, 2019, the State responded to defendant's petition to the trial court for admission into PTI. The State's submission applied the facts of

_____

[4] Rule 3:28-1 to -10 repealed Rule 3:28. The Supreme Court adopted the new Rules on July 15, 2017, with an effective date of July 1, 2018.

the case to the seventeen statutory factors in N.J.S.A. 2C:43-12(e). The DAG argued that factors (1), the nature of the offense; and (2), the facts of the case, provided sufficient grounds to support the State's objection to defendant's admission into PTI. The DAG provided the following summary of these salient facts:

> In sum, defendant is an attorney who, while serving as municipal prosecutor in multiple locations, also held the elected position of township commissioner in Haddon Township. When contacted in 20l3 by a township employee for assistance with some employment-related issues, defendant, as a township commissioner, directed that employee to a law firm to sue the township. The employee followed defendant's guidance, retained the law firm that defendant had recommended and sued the township.
>
> When the matter ultimately settled in 2015, the law firm that September sent defendant a referral fee of $7,106, which defendant accepted and deposited into a bank account. Defendant later returned that fee to the law firm, but only after being approached by Division of Criminal Justice detectives who advised him of their investigation into the matter in July 2018.

Against these facts, the State argued that factor N.J.S.A. 2C:43-12(e)(3), defendant's motivation and age, supported its position. Defendant was in his forties when he committed this crime. The State also found the following factors supported its decision to reject defendant's application for admission into PTI.

6

Factor (5), the nonexistence of personal problems or character flaws; (6), the crime was not related to a condition or situation conducive to change through participation in the PTI program; and (7), the need to deter public corruption and promote public confidence in elected officials.

The State conceded that factors N.J.S.A. 2C:43-12(e)(8) through (13) were not relevant to this case. However, factor (14), striking a proper balance between the nature of the crime and the value of supervisory treatment, weighed in favor of prosecution. The State argued there was "a strong need to send a message that public officials who use their official positions and official powers for personal benefit will be prosecuted." The State conceded that factors (15) and (16) were not relevant. Finally, factor (17) requires the State to consider whether the harm done to society by foregoing criminal prosecution outweighs the benefits to society in allowing an offender to participate in a supervisory treatment program. The State argued factor (17) strongly supports denying defendant admission into PTI.

The State concluded its statement in opposition as follows:

> The State's objection is based upon a consideration of the relevant factors in N.J.S.A. 2C:43-12e and those factors have been evaluated on both a quantitative and qualitative basis. The appropriate and relevant factors have been considered, no irrelevant Factors have been

considered, and the consideration of the relevant factors is sound. It is the State's conclusion that defendant, Mr. Dougherty, is not an appropriate candidate for PTI.

Defendant's appeal of the State's rejection of his PTI application came for oral argument before the trial court on February 7, 2019. Defense counsel argued defendant did not act in a corrupt manner nor violate the essential duties of his elected office when he referred a municipal employee to a law firm for legal advice. As framed by defense counsel:

> The case arises because an employee of the township where he was a commissioner felt that she had a potential whistle blower suit against the police department. She consulted with [defendant] and he referred her to an attorney who eventually brought a case and the township insurance company settled that case based on what they viewed the merits of that case.
>
> . . . .
>
> So the money here comes from the attorney for the [employee]. That was paid by the township insurance company, not by the township. It was paid by the township insurance company based on the merits of the claim brought against the township police department, not based on anything Mr. Dougherty did. So there is no indication whatsoever that the township, the citizens of the township, were in any way injured or paid anything as a result of Mr. Dougherty's conduct.

The DAG presented a starkly different account of defendant's conduct and the implications that a reasonable person can infer from it. After a municipal

employee received what she believed to be an unsatisfactory response from Human Resources, the aggrieved municipal employee approached defendant in his official role as a Township Commissioner. The employee spoke with defendant "briefly" about her situation and asked him for "help." As explained by the DAG:

> based on her statements . . . that were put forth in discovery to the court and the defense . . . she asked [defendant] for his help with the suspension. She didn't know why she had been suspended. And at that point the defendant advised . . . this township employee that it sounded like she had a basis for a (indiscernible) lawsuit and she should go talk to attorneys at a specific law firm[.]

The DAG noted that defendant received a letter from that specific law firm in May 2013 "thanking him for the referral." According to the DAG, the law firm's letter was "basically their acknowledgement that this was an official referral from one legal office to another." When the litigation was "resolved" in 2015, defendant received a letter from the law firm advising him of the facts that ended the litigation and transmitting a check payable to defendant in the amount of $7,106, constituting his referral fee pursuant to Rule 1:39-6(d).

In July 2018, detectives from the Criminal Division of the Attorney General's Office formally advised defendant that there was an ongoing

investigation concerning this matter. A "few days" after this interaction with the detectives, defendant returned the $7,106 to the law firm. The DAG represented to the trial court that the State was prepared to charge and prosecute defendant for second degree official misconduct under N.J.S.A. 2C:30-2(a), which carries a mandatory minimum sentence of five years imprisonment. After intense negotiations, the State allow defendant to plead guilty to third degree conspiracy to confer an unlawful benefit on a public official. N.J.S.A. 2C:5-2 and N.J.S.A. 2C:27-11(b).

The trial judge denied defendant's request to admit him to PTI over the State's objection. The judge began his analysis by noting that the crime defendant pled guilty to carries a presumption against admission into PTI. He also reviewed the relevant statutory factors in N.J.S.A. 2C:43-12(e) as well as the Supreme Court's decision in State v. Roseman, which reaffirmed that "PTI is essentially an extension of the charging decision, therefore the decision to grant or deny PTI is a 'quintessentially prosecutorial function.'" 221 N.J 611, 624 (2015) (quoting State v. Wallace, 146 N.J. 576, 582 (1996)). Consequently, a judge reviews a decision of the prosecutor to reject a defendant's PTI application with great deference. A judge is empowered to admit a defendant into PTI over the prosecutor's objection only if the record shows "clearly and

convincingly" that the prosecutor's decision constituted a "patent and gross abuse of discretion." <u>Wallace</u>, 146 N.J. at 582.

Here, the trial judge found defendant did not meet this burden of proof. The judge also found that the State duly considered all of the relevant factors under N.J.S.A. 2C:43-12(e). On February 19, 2019, the trial court sentenced defendant to a two-year term of probation, conditioned upon defendant surrendering his firearms purchaser identification card, undergoing a substance abuse evaluation and treatment at the discretion of his probation officer, submitting to periodic drug screening, and providing a DNA sample.

On appeal, defendant raises the following argument:

POINT ONE

> THE PROSECUTOR'S DENIAL OF THE DEFENDANT'S PTI APPLICATION WAS A PATENT AND GROSS ABUSE OF DISCRETION.

We reject this argument and affirm. The Supreme Court recently reaffirmed the standard of review of a trial court's decision to uphold the prosecutor's rejection of a defendant's application for admission into PTI:

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error

in judgement.  In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.

[State v. Johnson, 238 N.J. 119, 129 (2019) (quoting Roseman, 221 N.J. at 625)].

The record we have described at length here reveals that defendant has not satisfied any of these standards.  Defendant committed a crime that directly undermined the public's faith in the impartiality of elected officials.  The trial judge correctly found defendant did not rebut the presumption against admission into PTI codified in Rule 3:28-1(e)(1).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3079-18T3